NO. COA13-1412

NORTH CAROLINA COURT OF APPEALS

Filed: 7 October 2014

STATE OF NORTH CAROLINA

v.                                    Rowan County
                                      No. 11 CRS 55731-32, 55734
MELISSA LEE OTT


Appeal by defendant from judgment entered 5 July 2013 by Judge Julia L. Gullett in Rowan County Superior Court. Heard in the Court of Appeals 13 August 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Oliver G. Wheeler, IV, for the State.*
>
> *James R. Glover for defendant-appellant.*


HUNTER, Robert C., Judge.

Defendant Melissa Lee Ott appeals from the judgment entered after a jury convicted her of: (1) trafficking in 28 grams or more of opium by sale; (2) trafficking in 28 grams or more of opium by possession; and (3) possession of opium with the intent to sell and deliver. On appeal, defendant argues that the trial court erred by denying her request to instruct the jury on the defense of entrapment.

After careful review, because defendant offered sufficient evidence of entrapment, the trial court erred in refusing to instruct the jury on the defense of entrapment. Accordingly, we vacate the judgment and remand for trial.

## Background

In 2011, Emily Eudy ("Eudy"), a friend of defendant, contacted the Rowan County Sheriff's Office and offered to serve as a confidential informant in an attempt to receive a more lenient sentence for her pending drug charges. Eudy informed Rowan Sherriff's Detective Jay Davis ("Detective Davis") that defendant had narcotics for sale and agreed to introduce an undercover officer to defendant to make a purchase. Eudy and defendant had been friends for about one year.

On 27 July 2011, the Rowan County Sherriff's office provided Detective Kevin Black ("Detective Black") with an undercover vehicle, $150 in special funds, and a recording device. Detective Black drove Eudy to defendant's house. According to the audio/video recording which was shown to the jury at trial, the following interaction took place: defendant told Detective Black that she usually only dealt drugs to six people and asked Detective Black to pull up his shirt to prove that he was not a police officer. Detective Black told

defendant that he had $150 to spend on pills. Defendant pulled three pill bottles out of her purse and asked if he was interested in "5's" (5 milligram pills). Detective Black acknowledged that he was interested in purchasing the pills, and defendant poured a bottle of white pills onto the table and counted out 40 5 mg pills of hydrocodone and acetaminophen. Defendant told Detective Black that she could sell him the white pills for $3 and asked if he also wanted to buy 10 mg pills. After Detective Black said he did, defendant poured blue and yellow pills onto the table and told him that she could get $7 to $8 for the blue pills. Defendant also asked Detective Black if he wanted some speed and claimed that she sold 90 percent of her speed to truckers.

In total, defendant sold Detective Black 34.2 grams of pills which included 40 white pills, 9 blue pills, and 1 yellow pill. Analysis by the Iredell County Sherriff's lab confirmed the presence of hydrocodone in the blue and white pills.

On 31 July 2011, defendant was indicted for (1) trafficking in 28 grams or more of a preparation opium by sale to Detective Black; (2) trafficking in 28 grams or more of a preparation opium by possession; and (3) possession of a preparation opium

with intent to sell and deliver. The matter came on for trial on 2 July 2013.

At trial, defendant took the stand in her own defense; she testified that she was a drug user, not a seller, and only sold the pills as a favor to Eudy. Defendant claimed that she "absolute[ly]" would not have sold the pills but for Eudy's involvement. According to defendant, Eudy "wanted [her] to sell the pills to [Detective Black] and convince him that . . . he could keep coming back for more . . . so that [Eudy] wouldn't get in trouble with her husband." Defendant also alleged that, on the morning of the sale, Eudy gave her three bottles of pills, coached her on what to say, and told her that she could keep the 7.5 mg pills for herself for helping Eudy complete the sale. Defendant claimed that she was just trying to "complete the act [Eudy] wanted [her] to do" and was only "talking the talk" when she spoke to Detective Black about pricing, people she usually dealt with, and selling speed to truckers. In other words, according to defendant, Eudy provided her details on exactly what to say to Detective Black during the sale. However, defendant did admit that, on two prior occasions, she sold cocaine to Eudy and had previously been convicted of possession of cocaine and drug paraphernalia.

At trial, Eudy also testified as a witness for the defense. Eudy refuted defendant's claim that she did not sell drugs, claiming that defendant had been selling crack cocaine and pain pills for the entire time she knew defendant. Moreover, she denied providing the pills to defendant. Eudy was not convicted of the pending trafficking charge but was convicted of attempted trafficking and received a probationary sentence.

At the beginning of the charge conference, the trial court listed the jury instructions it intended to give, including an instruction on the defense of entrapment. The State objected, and, after hearing arguments from both parties, the trial judge ruled that the evidence established defendant's predisposition to commit the crime and, therefore, declined to give the defense instruction. On 5 July 2013, the jury found defendant guilty of all three charges. The trial court sentenced defendant to a minimum term of 225 months to a maximum term of 279 months imprisonment and fined her $500,000. Defendant gave timely notice of appeal.

**Discussion**

Defendant's sole argument on appeal is that the trial court erred by failing to give the requested instruction on the defense of entrapment. Specifically, defendant contends that,

taken in the light most favorable to defendant, the evidence shows that the plan to sell the pills originated in the mind of Eudy, who was acting as an agent for law enforcement, and defendant was only convinced to do so through trickery and persuasion. Therefore, the evidence was sufficient to justify a jury instruction on entrapment. We agree.

Whether the evidence, taken in the light most favorable to the defendant, is sufficient to require the trial court to instruct on a defense of entrapment is an issue of law that is determined by an appellate court de novo. *State v. Redmon*, 164 N.C. App. 658, 662-664, 596 S.E.2d 854, 858-859 (2004). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment, for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (internal quotation marks omitted).

"Entrapment is complete defense to the crime charged." *State v. Branham*, 153 N.C. App. 91, 99, 569 S.E.2d 24, 29 (2002). To be entitled to the defense of entrapment, a defendant must present "some credible evidence," *State v. Thomas*, __ N.C. App. __, __, 742 S.E.2d 307, 309, *disc. review denied*, __ N.C. __, 747 S.E.2d 555 (2013), of the following elements: "(1) acts of persuasion, trickery, or fraud carried

out by law enforcement officers or their agents to induce a defendant to commit a crime, [and that] (2) . . . the criminal design originated in the minds of the government officials, rather than the innocent defendant, such that the crime is the product of the creative activity of the law enforcement authorities[,]" *State v. Walker*, 295 N.C. 510, 513, 246 S.E.2d 748, 750 (1978). A "defendant is entitled to a jury instruction on entrapment whenever the defense is supported by defendant's evidence, viewed in the light most favorable to the defendant." *State v. Jamerson*, 64 N.C. App. 301, 303, 307 S.E.2d 436, 437 (1983). "The issue of whether or not a defendant was entrapped is generally a question of fact to be determined by the jury," *State v. Collins*, 160 N.C. App. 310, 320, 585 S.E.2d 481, 489 (2003), and when the "defendant's evidence creates an issue of fact as to entrapment, then the jury must be instructed on the defense of entrapment[,]" *State v. Branham*, 153 N.C. App. 91, 100, 569 S.E.2d 24, 29 (2002).

However, the entrapment defense is not available to a defendant who has a "predisposition to commit the crime independent of governmental inducement and influence." *State v. Hageman*, 307 N.C. 1, 29, 296 S.E.2d 433, 449 (1982). "Predisposition may be shown by a defendant's ready compliance,

acquiescence in, or willingness to cooperate in a criminal plan where the police merely afford the defendant an opportunity to commit the crime." *Id*. at 31, 296 S.E.2d at 450.

Here, taking the evidence in a light most favorable to defendant and, in particular, defendant's testimony, there was sufficient evidence that defendant was induced to commit the sale through acts of persuasion and trickery to warrant the instruction. Specifically, according to defendant's evidence, Eudy was acting as an agent for the Sherriff's office when she approached defendant, initiated a conversation about selling pills to her buyer, provided defendant the pills, and coached her on what to say during the sale. While it is undisputed that defendant was a drug user, defendant claimed that she had never sold pills to anyone before. In fact, the only reason she agreed to sell them was because she was "desperate for some pills," and she believed Eudy's story that she did not want her husband to find out what she was doing. Defendant's testimony established that Eudy told defendant exactly what to say such that, during the encounter, defendant was simply playing a role which was defined and created by an agent of law enforcement. In sum, this evidence, if believed, shows that Eudy not only came up with the entire plan to sell the drugs but also

persuaded defendant, who denied being a drug dealer, to sell the pills to Detective Black by promising her pills in exchange and by pleading with her for her help to keep the sale secret from her husband. Furthermore, viewing defendant's evidence as true, she had no predisposition to commit the crime of selling pills. Although Eudy disputed this fact at trial, as this Court has noted, "[f]or purposes of the entrapment issue, we must assume that [the] defendant's testimony is true[,]" *State v. Foster*, __ N.C. App. __, __, __ S.E.2d __, ___ (Aug. 5, 2014) (No. COA13-1084). Thus, defendant's evidence was sufficient to create an issue as to inducement and lack of predisposition to commit the offense, and the trial court should have instructed on entrapment.

The case of *State v. Jamerson*, 64 N.C. App. 301, 307 S.E.2d 436 (1983), provides guidance. In *Jamerson*, this Court held that the defendant introduced sufficient evidence of inducement to justify a jury instruction on entrapment by showing: (1) an undercover officer and his informant initiated a conversation about selling drugs with the defendant; (2) the officer repeatedly urged the defendant to provide the drugs; (3) the informant located a person who would sell the drugs and drove the officer and the defendant to the location; and (4) the

officer then provided the defendant the money to buy the drugs. *Id*. at 303-304, 307 S.e.2d at 437. In a similar case, this Court has also held that there is sufficient evidence of inducement to justify a jury instruction on entrapment when the defendant is promised something in return for participating in the sale of drugs. *State v. Blackwell*, 67 N.C. App. 432, 438, 313 S.E.2d 797, 801 (1984) (defendant was promised a job if he would sell drugs to an undercover officer).

Similarly, in *State v. Stanley*, 288 N.C. 19, 32-33, 215 S.E.2d 589, 597-98 (1975), our Supreme Court held that the evidence was sufficient to establish that the defendant was entrapped as a matter of law. In *Stanley*, the undisputed evidence showed that an undercover officer befriended the defendant based on false pretenses, repeatedly asked the defendant about purchasing drugs, persuaded the defendant to purchase drugs for him, and supplied the defendant with the money to do so. *Id*. at 32, 215 S.E.2d at 597. Prior to his arrest for possession of a controlled substance, the defendant admitted to purchasing drugs that turned out to be counterfeit. *Id.* at 22, 215 S.E.2d at 591. The Supreme Court held that this evidence was sufficient to demonstrate that the criminal design originated with the law enforcement officer, and there was no

evidence that defendant was predisposed to commit the crime. *Id*. at 32-33, 215 S.E.2d at 597.

We believe that the facts of this case are analogous to *Jamerson* and *Stanley*. Here, defendant testified that she was approached by Eudy, an agent of law enforcement, who initiated the discussion about selling drugs. Defendant testified that not only did Eudy initiate the conversation, but that the entire plan was Eudy's idea. Similar to the *Jamerson* and *Stanley* defendants, defendant did not locate the drugs on her own but they were provided to her by Eudy. Furthermore, defendant testified that Eudy instructed her on what to say and how to act during the sale.

In sum, viewed in a light most favorable to defendant, defendant's testimony, if believed, would permit the jury to find that the idea for the crime of selling pills originated with and was pursued by Eudy, with no indication that defendant had a predisposition to sell pills. Thus, as in *Jamerson* and *Stanley*, the evidence was sufficient to warrant an instruction on entrapment.

The State, nevertheless, argues that defendant was predisposed to commit the crime and that Eudy simply afforded defendant the opportunity to sell the pills. Consequently,

relying on *State v. Thompson*, 141 N.C. App. 698, 707, 543 S.E.2d 160, 166 (2001), the State contends that defendant was not entitled to the instruction on entrapment, noting that this Court has consistently held that the sale of drugs as a favor is "not evidence of inducement, just opportunity to commit the offense." We disagree.

In *Thompson*, *id.* at 699, 543 S.E.2d at 162, the sheriff's office received information from a confidential informant that the defendant was selling narcotics. In order to "ascertain the validity of the informant's information," law enforcement officers arranged for and observed the confidential informant buy cocaine from the defendant. *Id.* The informant then introduced an undercover narcotics detective to the defendant. *Id.* When the undercover officer initially asked to buy cocaine, defendant claimed that he "could not help" because he only used heroin. *Id.* at 700, 543 S.E.2d at 162. According to the defendant, however, the informant told him that the defendant's upstairs neighbor was a supplier. *Id.* On two separate occasions, the defendant purchased cocaine from his upstairs neighbor for the undercover officer. *Id.* At trial, the defendant testified that, although he was a recovering heroin addict, he had no prior convictions for drug dealing, had never

gotten cocaine for the confidential informant before, and did not know that the upstairs neighbor was a drug dealer. *Id*. The trial court denied his request for an entrapment instruction. *Id*. at 699, 543 S.E.2d at 162.

On appeal, the defendant argued that the trial court committed reversible error by refusing to instruct on entrapment. However, this Court disagreed, noting:

> Neither the informant nor O'Neil provided gifts or made promises before asking to purchase cocaine from defendant. Also, although defendant testified that he had been reluctant to sell cocaine to the informant and O'Neil, his own testimony showed defendant required little urging before acquiescing to their requests. "That [the undercover officer] gave defendant the money and asked him to obtain the cocaine is not evidence of inducement, just an opportunity to commit the offense." *State v. Martin*, 77 N.C. App. 61, 67, 334 S.E.2d 459, 463 (1985), *cert. denied*, 317 N.C. 711, 347 S.E.2d 47 (1986). As we held in *Martin*, selling drugs as a favor and taking no profit from the transaction does not entitle a defendant to an instruction on entrapment. *See also State v. Booker*, 33 N.C. App. 223, 234 S.E.2d 417 (1977). Defendant failed to introduce sufficient evidence of persuasion by either the informant or O'Neil to suggest that the criminal design originated with the law enforcement agents and not with defendant.

*Id*. at 707, 543 S.E.2d at 166. Thus, the Court concluded that the evidence did not warrant the instruction. *Id*.

However, we find the facts of the present case distinguishable. Unlike *Thompson*, here, there was no "ascertain[ment]" of the validity of Eudy's information. Although Detective Davis testified that Eudy made a "controlled buy" from defendant prior to the incident where she sold the pills to Detective Black, Detective Davis acknowledged that the "controlled buy" was not witnessed by law enforcement nor recorded. Instead, Eudy brought him 0.5 grams of hard cocaine that she claimed she had purchased from defendant. However, at trial, when asked about the previous "controlled buy," Eudy pled the Fifth Amendment and refused to answer. Thus, unlike *Thompson* where the police actually observed the defendant sell drugs to the informant, here, police had no way of ascertaining the validity of the "controlled buy" nor the reliability of Eudy's information about defendant, especially since Eudy was unwilling to confirm this prior purchase at trial. Furthermore, construing defendant's testimony as true, Eudy, the agent of law enforcement, did not simply point defendant to a supplier but actually supplied defendant the pills to sell and told her what to say during the interactions with Detective Black. Once the transaction was complete, the money would go to Eudy with defendant being paid in pills. In other words, the entire drug

transaction flowed through Eudy, an agent of law enforcement; there were no other suppliers or third parties involved as in *Thompson* where the defendant had to go to an outside, unrelated supplier to get the drugs.

Finally, unlike the defendant in *Thompson*, defendant, who admitted that she was a pill user, did receive pills in exchange for selling Detective Black the pills, pills which defendant admitted she was "desperate" for. In contrast, however, the *Thompson* defendant received nothing in exchange for selling the cocaine—his entire motivation was to do a favor for the confidential informant, and he "[took] no profit from the transaction." *Id*. at 707, 543 S.E.2d at 166. Thus, in sum, the evidence does not simply show that defendant was given an "opportunity" to sell the drugs; there was sufficient evidence of persuasion and evidence that the entire criminal design, including the supply of the drugs and the details of how defendant should act, originated with law enforcement. Accordingly, the State's reliance on *Thompson* is misplaced.

In contrast, viewing the evidence in a light most favorable to defendant and "assum[ing]" defendant's testimony is true, *Foster*, __ N.C. App. at ___, ___ S.E.2d at ___, Eudy initiated a conversation with defendant and asked her to sell pills to

Detective Black. Eudy introduced defendant to Detective Black, coached defendant on exactly what to do during the encounter, and supplied the drugs. Although a user of pills, defendant denied ever selling them and steadfastly claimed that she would never have sold them but for Eudy's persistence and offer to provide defendant pills. Accordingly, defendant presented sufficient evidence of the elements of entrapment, and the trial court erred in refusing to instruct on this defense at trial.

## Conclusion

In sum, we hold that defendant presented sufficient evidence to warrant submission of the entrapment defense to the jury. Defendant is, therefore, entitled to a new trial.

NEW TRIAL.

Judges DILLON and DAVIS concur.