IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-1318

 Filed: 21 May 2019

Lincoln County, No. 15CRS051911

STATE OF NORTH CAROLINA

 v.

DAVID ALAN KELLER, Defendant.

 Appeal by defendant from judgment entered 26 September 2016, by Judge Eric

L. Levinson in Lincoln County Superior Court. Heard in the Court of Appeals 6

September 2018.

 Attorney General Joshua H. Stein, by Assistant Attorney General M. Elizabeth
 Guzman, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Emily H.
 Davis, for defendant-appellant.

 BERGER, Judge.

 On August 23, 2016, a Lincoln County jury found David Alan Keller

(“Defendant”) guilty of solicitation of a minor by computer or electronic device and

appearing at a meeting location for the purpose of committing an unlawful sex act.

Defendant timely appeals, arguing that the trial court erred when it did not submit

the defense of entrapment to the jury. We find no error.

 Factual and Procedural Background
 STATE V. KELLER

 Opinion of the Court

 On May 11, 2015, Detective Brent Heavner (“Detective Heavner”) of the

Lincolnton Police Department went undercover online as a fifteen-year-old boy with

the fictitious name “Kelly.” As part of a year-and-a-half-long operation targeting

online sexual predators, “Kelly” posted a personal advertisement titled “Boy Needs a

Man” on Craigslist’s adults-only “Personal Encounters” section, which read:

 Okay. I never, never did this so here it goes. I’m wanting
 to experience a man. Never had tried I but want to. I have
 been with a girl and I want to try a man. Am posting here
 because I want a complete stranger so no one will find out
 about this. I would like an older man that is not shy and
 knows what to do because I will probably be a little
 nervous. I would prefer a pic and a number so we can, so
 we cannot use e-mail. I will be picky so be patient but
 would like to do this soon. You would have to come to me.
 Would like to try anything. And I am a white male open to
 anyone.

 The next day, at 6:07 a.m., Defendant responded to “Kelly’s” advertisement as

follows:

 Hey[.] I am a 44 white male looking for a young guy to take
 care of and spoil[.] I am 175 pounds, 32/32 pants, 6.5 cut,
 DD free. If you would like to be a daddy’s boy and have
 your every need provided for you let me know I am looking
 for a boy to treat very special.

At 10:52 a.m., “Kelly” responded, “whats your number and what do you like[?]”

Defendant e-mailed his phone number. When “Kelly” did not answer immediately,

Defendant sent the following three emails later that day:

 2:43 p.m.: I sent you my number. I look like a 44 year old
 guy. Not fat and not ugly.

 -2-
 STATE V. KELLER

 Opinion of the Court

 9:38 p.m.: Are u still needing a man. I am still looking for
 a boy[.]

 9:51 p.m.: This man is still looking for his boy toy[.]

 Over the next few days, “Kelly” and Defendant exchanged a series of text

messages all detailing Defendant’s desire for “Kelly” to live with him. After initial

introductions, Defendant stated, “I could offer you a home. Car to drive[,] phone[,]

clothes[, and] money to spend. Pretty much what ever you need.” “I have had 3 boys.

They never had to work and got everything they ever asked for[.]” When Defendant

and “Kelly” exchanged photos (Detective Heavner used a photo from Google images),

Defendant stated, “I would love to make you my boy,” “I would take really good care

of you,” “I think you’re a little hottie,” and “I could have sex 5 times a day.” “Kelly”

responded that he could move in that day, but he was afraid that he may be too young

for Defendant.

 [Detective Heavner]: I may be too young but I am needing
 a place to go, my aunt is about to put me back in foster care
 and I will run away if she does[.]

 [Defendant]: How old are u[?] If your 17 it’s legal[.]

 [Detective Heavner]: I am not quiet (sic) 16 and actually 16
 is the legal age[.]

 [Defendant]: Send me a pic I can see your face please[.]

 [Detective Heavner]: I am scared to show my face right
 now.

 [Defendant]: Well. I could let you live here with me and
 take care of you. But we could not have sex till you was old

 -3-
 STATE V. KELLER

 Opinion of the Court

 enough[.] . . . I do not want to go to jail[.] I had one boy I
 played with when he was 16 but turned 17 the next week[.]

 ....

 [Defendant]: You know my son got on line and thought he
 was talking to a girl it turned out to be a cop and when he
 went to meet her he got arrested and went to jail for 3
 years[.]

 [Detective Heavner]: For real?

 [Defendant]: Yes for real he really went to jail for 3 years
 and now has to register as a sex offender[.]

 Knowing the consequences of talking online to a stranger and knowing that

“Kelly” was not yet sixteen-years-old, Defendant continued the conversation,

agreeing to have sexual relations with “Kelly.”

 [Detective Heavner]: I am very curious[.]

 [Defendant]: Curious about what[?]

 [Detective Heavner]: I don’t know how to say it[.]

 [Defendant]: Just say it. I won’t judge you[.]

 [Detective Heavner]: How do I know if I am[.] And if I come
 there and we can’t be sexual it might be a mistake[.]

 [Defendant]: I said we could[.]

 [Detective Heavner]: You said we could when I am old
 enough for u[.]

 [Defendant]: Well like I said don’t want to talk through
 text. But will talk to you in person about it[.]

 -4-
 STATE V. KELLER

 Opinion of the Court

 [Detective Heavner]: You said I said we could so does that
 mean yes cuz if not I may have to find someone else first to
 see what its like[.]

 [Defendant]: Don’t find anyone else. Please[.]

 [Detective Heavner]: Only if we can have oral sex and anal
 tomorrow so I will know, just give me a yes or no and I will
 shut up about it[.]

 [Defendant]: Yes[.]

 ....
 [Defendant]: I have been looking for a boy for a long time[.]

 After exchanging numerous texts, Defendant agreed to meet “Kelly” and take

him back to Defendant’s home. When Defendant arrived at the meeting location,

officers were on scene and placed Defendant under arrest.

 On August 18, 2016, Defendant was indicted for solicitation by computer or

electronic device of a person believed to be fifteen or younger for the purpose of

committing an unlawful sex act and appearing at the meeting location where he was

to meet the person whom he believed was a child. At trial, Defendant testified that

he began using Craigslist’s personal advertisements in 2006. He stated that over the

course of eleven years, he had met multiple men on the website and three even lived

with him for extended periods of time. Defendant testified that he responded to

“Kelly’s” advertisement because he and his live-in companion were having problems

and Defendant wanted to make him jealous. After repeatedly claiming that he just

 -5-
 STATE V. KELLER

 Opinion of the Court

wanted to “make sure Kelly was okay,” Defendant finally conceded that sex is a part

of what he gets in return for his generosity.

 On August 23, 2016, the jury found Defendant guilty as charged. On

September 26, 2016, the trial court sentenced Defendant to ten to twenty months

imprisonment and mandatory registration as a sex offender for thirty years.

Defendant filed a petition for a writ of certiorari, which was granted by this Court.

Defendant argues on appeal that the trial court erred when it failed to instruct the

jury on entrapment.

 Analysis

 “Whether the evidence, taken in the light most favorable to the defendant, is

sufficient to require the trial court to instruct on a defense of entrapment is an issue

of law that is determined by an appellate court de novo.” State v. Ott, 236 N.C. App.

648, 651, 763 S.E.2d 530, 532 (2014) (citation omitted). “Under a de novo review, the

court considers the matter anew and freely substitutes its own judgment, for that of

the lower tribunal.” Id. at 651, 763 S.E.2d at 533 (citation and quotation marks

omitted).

 “In determining whether a defendant is entitled to a jury instruction on

entrapment, the trial court must view the evidence in the light most favorable to the

defendant.” State v. Morse, 194 N.C. App. 685, 690, 671 S.E.2d 538, 542 (2009)

(citation omitted). “Before a [t]rial [c]ourt can submit [an entrapment] defense to the

 -6-
 STATE V. KELLER

 Opinion of the Court

jury there must be some credible evidence tending to support the defendant’s

contention that he was a victim of entrapment. . . .” State v. Burnette, 242 N.C. 164,

173, 87 S.E.2d 191, 197 (1955) (citations omitted). “The issue of whether or not a

defendant was entrapped is generally a question of fact to be determined by the jury,

and when the defendant’s evidence creates an issue of fact as to entrapment, then the

jury must be instructed on the defense of entrapment.” Ott, 236 N.C. App. at 651-52,

763 S.E.2d at 533 (purgandum).

 “Entrapment is the inducement of a person to commit a criminal offense not

contemplated by that person, for the mere purpose of instituting a criminal action

against him.” State v. Davis, 126 N.C. App. 415, 417, 485 S.E.2d 329, 331 (1997)

(citation omitted). “Entrapment is a complete defense to the crime charged.” Morse,

194 N.C. App. at 689, 671 S.E.2d at 542 (citation and quotation marks omitted). The

defendant has the burden of proving the affirmative defense of entrapment. State v.

Luster, 306 N.C. 566, 579, 295 S.E.2d 421, 428 (1982).

 “The defense of entrapment is available when there are acts of persuasion,

trickery or fraud carried out by law enforcement officers or their agents to induce a

defendant to commit a crime and when the origin of the criminal intent lies with the

law enforcement agencies.” State v. Hageman, 307 N.C. 1, 28, 296 S.E.2d 433, 449

(1982) (citations omitted). “We note that this is a two-step test and the absence of

one element does not afford the defendant the luxury of availing himself of the

 -7-
 STATE V. KELLER

 Opinion of the Court

affirmative defense of entrapment.” Morse, 194 N.C. App. at 690, 671 S.E.2d at 542.

Under this test, “[t]he defendant must show that the trickery, fraud or deception was

practiced upon one who entertained no prior criminal intent.” Hageman, 307 N.C. at

28, 396 S.E.2d at 449 (purgandum).

 “A clear distinction is to be drawn between inducing a person to commit a crime

he did not contemplate doing, and the setting of a trap to catch him in the execution

of a crime of his own conception. The determinant is the point of origin of the criminal

intent.” Morse, 194 N.C. App. at 690, 671 S.E.2d at 542. When analyzing whether a

defendant was predisposed to commit the crime, our Supreme Court has stated:

“ ‘[w]illing’ is a synonym of the word ‘predisposed.’ ” Hageman, 307 N.C. at 26, 396

S.E.2d at 447 (citation omitted). Therefore, “[p]redisposition may be shown by a

defendant’s ready compliance, acquiescence in, or willingness to cooperate in the

criminal plan where the police merely afford the defendant an opportunity to commit

the crime.” Id. at 31, 396 S.E.2d at 450-51 (citations omitted).

 “It is well settled that the defense of entrapment is not available to a defendant

who has a predisposition to commit the crime independent of governmental

inducement and influence.” Id. at 29, 396 S.E.2d at 449.

 The fact that officers or employees of the government
 merely afford opportunities or facilities for the commission
 of the offense does not defeat the prosecution, nor will the
 mere fact of deceit defeat a prosecution, for there are
 circumstances when the use of deceit is the only practicable
 law enforcement technique available. It is only when the

 -8-
 STATE V. KELLER

 Opinion of the Court

 [g]overnment’s deception actually implants the criminal
 design in the mind of the defendant that the defense of
 entrapment comes into play.

State v. Salame, 24 N.C. App. 1, 7, 210 S.E.2d 77, 81-82 (1974) (citation and quotation

marks omitted) (emphasis added).

 This Court was presented with a similar legal and factual scenario in State v.

Morse. State v. Morse, 194 N.C. App. 685, 671 S.E.2d 538. In Morse, the defendant

entered an adults-only online chat room and began speaking with an undercover law

enforcement officer. Id. at 694, 671 S.E.2d at 539-41. As part of an undercover

operation, the officer posted as a fourteen-year-old girl claiming that “she was

inexperienced and looking for an older ‘friend.’ ” Id. at 687, 671 S.E.2d at 540. When

Morse went to meet the officer in person, he was arrested. Id. at 687, 671 S.E.2d at

540.

 Morse appealed his conviction and argued that the trial court erred when it

refused to submit the defense of entrapment to the jury. Id. at 689, 671 S.E.2d at

541-42. In concluding that the trial court did not err in not submitting the

entrapment defense to the jury, the Morse Court held that “[a]lthough defendant did

not have a criminal record, record of molestation, or record of other similar offensive

acts, uncontroverted record evidence shows that defendant had previously engaged

in sexually explicit communications with other users in adults only chat rooms and

 -9-
 STATE V. KELLER

 Opinion of the Court

even met with one of those users to engage in sexual contact.” Id. at 692, 671 S.E.2d

at 543.

 Here, Defendant failed to prove he was entitled to an instruction on

entrapment. The evidence supports Defendant’s predisposition and willingness to

engage in the crime charged. Defendant responded to a posting entitled “Boy Needing

a Man” with messages that (1) inquired if Kelly wanted to by a “daddy’s boy,” [R.p.12]

(2) stated Defendant was “looking for a boy,” [R.p.12] and (3) repeated that Defendant

was “still looking for a boy” [R.p.13] when Kelly failed to respond quickly enough for

Defendant. (Emphasis added). Even after “Kelly” told Defendant he was fifteen-

years-old and may be too young [R.p.24], Defendant continued to speak with Kelly,

and Defendant asked Kelly to send him a picture [R.p.24]. Defendant then sent

sexually explicit messages to someone he believed was fifteen years old and

attempted to meet “Kelly” for the purpose of engaging in sexual acts. Thereafter, he

readily agreed to have oral and anal sex with “Kelly” when they were to meet.

 Additionally, Defendant failed to sufficiently demonstrate that he was not

predisposed to committing the act. As in Morse, it is irrelevant that Defendant did

not have a criminal record, never solicited a child for sex, never had sex with a child,

or never brought a child into his home. Contrary to Defendant’s assertion, Detective

Heavner did not manipulate Defendant into the ongoing conversation, nor did he

“actually implant[ ] the criminal design” in Defendant’s mind. Salame, 24 N.C. App.

 - 10 -
 STATE V. KELLER

 Opinion of the Court

at 7, 210 S.E.2d at 81-82. Detective Heavner merely afforded Defendant the

opportunity to commit the offense in which he willingly engaged.

 Moreover, Defendant had a nine-year history of responding to personal

advertisements on Craigslist. He brought three of the men he had interacted with

over the years into his home. One of the three, with whom he had engaged in sexual

conduct, was sixteen-years-old. Furthermore, even after “Kelly” informed Defendant

that he may be too young, Defendant continued to speak with him. After Defendant

told Detective Heavner that he could come live with Defendant and that Defendant

could take care of “Kelly,” Defendant readily agreed to have oral and anal sex with

“Kelly” the following day. At trial, Defendant even admitted that sex is a part of what

he receives in return for his generosity to the people he met online.

 Even when viewed in the light most favorable to Defendant, he has failed to

demonstrate that he was entitled to an instruction on entrapment.

 Conclusion

 The trial court did not err when it declined to submit the defense of entrapment

to the jury.

 NO ERROR.

 Judge TYSON concurs.

 Judge INMAN dissents in separate opinion.

 - 11 -
 No. COA17-1318 – State v. Keller

 INMAN, Judge, dissenting.

 Because the evidence required the trial court to instruct the jury on

Defendant’s defense that he was entrapped by Detective Heavner, I respectfully

dissent.

 “It is the duty of the court to charge the jury on all substantial features of the

case arising on the evidence . . . [a]nd all defenses presented by defendant’s evidence

are substantial features of the case[,]” State v. Dooley, 285 N.C. 158, 163, 203 S.E.2d

815, 818 (1974) (citations omitted). This duty is particularly important when the

defense concerns the conduct of State actors.1 I would hold the trial court committed

prejudicial error in denying Defendant’s request for an instruction on entrapment,

vacate his conviction, and remand for a new trial. I express no opinion regarding

whether Defendant is guilty or innocent—that question is reserved for a jury.

 I. FACTUAL HISTORY

 As the majority rightly points out, although Defendant bears the burden of

proof in seeking an entrapment instruction,2 resolution of this appeal requires us to

 1 The defense of entrapment is itself a check on unwarranted government intrusion into the
lives of the citizenry and a limitation on the misallocation of State resources: “[L]aw enforcement
tactics that seek to induce persons who are not predisposed to crime to engage in criminal activity are
intolerable for two reasons. First, individuals have a strong interest in privacy: law-abiding people
should be left alone by the government. Second, law enforcement resources are wasted when the
subjects of investigation are not predisposed to commit crimes.” Entrapment Through Unsuspecting
Middlemen, 95 Harv. L. Rev. 1122, 1130-31 (1982) (footnotes omitted).
 2 Defendant bears “the burden of proving entrapment to the satisfaction of the jury.” State v.

Davis, 126 N.C. App. 415, 418, 485 S.E.2d 329, 331 (1997). The measure of proof that satisfies this
burden is for the jury to determine, and may be as low as a bare preponderance of the evidence. State
v. Miller, ___ N.C. App. ___, ___, 812 S.E.2d 692, 695 (2018).
 STATE V. KELLER

 Inman, J., dissenting

consider the evidence introduced at trial in the light most favorable to the Defendant.

We also, “[f]or purposes of the entrapment issue, . . . must assume that [D]efendant’s

testimony is true.” State v. Foster, 235 N.C. App. 365, 374, 761 S.E.2d 208, 215 (2014);

see also State v. Ott, 236 N.C. App. 648, 652, 763 S.E.2d 530, 533 (2014). Given this

standard of review, examination of Defendant’s evidence not addressed in the

majority opinion, including Defendant’s testimony, is necessary.

 Defendant testified at trial that he sought personal relationships with men via

Craigslist, as opposed to other online services, because children frequented other

websites and Craigslist requires each user to verify that he is eighteen or older.

Defendant posted “off and on” to Craigslist, sometimes looking to “meet somebody”

on the Casual Encounters section of the site, which largely, but not exclusively,

featured people looking for sex. He testified that after meeting someone online, he

would “take care of them and help them out until they move on, . . . that’s just what

I do.” He further explained that he “enjoy[s] having somebody to take care of. Not

for sex. . . . That, that’s not what it’s about. It’s about just being needed and taking

care of somebody.” Defendant characterized these relationships as offering

“[c]ompanionship,” admitting that sex “[o]ccasionally” factored into them but also

insisting that “[i]t’s not every time, no. . . . [It] wasn’t a primary objective.” Instead

of sex, Defendant testified, the common element was simply helping the person until

 -2-
 STATE V. KELLER

 Inman, J., dissenting

he could get back on his feet by offering a free place to stay, assistance with

employment or school, and money for clothes and transportation.

 Defendant met hundreds of men on Craigslist; some of the men moved in with

Defendant and “[s]ome just bec[a]me friends.” For example, Defendant, after

responding to ads in the Casual Encounters section of Craigslist, met two young men

and allowed them to move into his house. Defendant bought the men clothes and

gave them money, but he never had sex with either of them. 3 Although Defendant

testified that he had sex with four men who had previously lived with him—only one

of whom he met on Craigslist—each was eighteen or older.4 Defendant flatly denied

ever soliciting a minor on Craigslist or otherwise.

 Defendant testified that he responded to Detective Heavner’s Craigslist ad not

because he was seeking sex with a minor, but because he wanted to make his

boyfriend jealous. Defendant admitted that his first response to Detective Heavner’s

 3 Despite their Craigslist personals referring to them as “boys,” both of these men were
eighteen years old or older. Defendant testified that he “call[ed] everybody ‘boy’[,]” particularly people
under the age of 25, and another witness who testified at trial corroborated Defendant’s testimony
that he used the word to refer to adult men younger than him. Defendant further testified that he
understood Detective Heavner’s use of the phrase “boy toy” to refer to a younger man with an older
man, but that Defendant did not believe it carried a sexual connotation. Defendant also testified that
he used the word “boy” in correspondence with Detective Heavner to mean “[a] person that I take care
of.”
 4 The majority asserts Defendant had sex with a sixteen-year-old boy who moved into

Defendant’s home after interacting with him on Craigslist. This fact is simply not supported by the
evidence when viewed in the light most favorable to the Defendant. Although Defendant admitted
texting Detective Heavner that he “had one boy I played with when he was 16 but turned 17 the next
week[,]” he testified that this referred to a sexual encounter he had at the age of nineteen, 33 years
earlier. In any event, sixteen is the age of consent in North Carolina. N.C. Gen. Stat. §§ 14-27.25 and
14-27.30 (2017).

 -3-
 STATE V. KELLER

 Inman, J., dissenting

Craigslist ad was sexual in nature. He also testified, however, that he believed he

was responding to an ad placed by an adult. Defendant admitted to discussing sex

with Detective Heavner in their early text messages back and forth, but these text

messages all occurred before Detective Heavner disclosed “Kelly’s” age. After these

initial messages, Detective Heavner texted the following: “I may be to[o] young but I

am needing a place to go, my aunt is about to put me back in foster care and I will

run away if she does[.]” Defendant replied by asking how old “Kelly” was and stated

“[i]f you’re 17 it’s legal.” “Kelly” responded: “I am a good kid, just my parents are shit

bags and are in prison and I am the one suffering, I am not quiet [sic] 16 and actually

16 is the legal age.”

 Defendant testified he did not recall seeing a reference to “Kelly” being under

sixteen at the time he was texting with Detective Heavner, but that he “was under

the impression” from the text messages that “Kelly” was seventeen years old and

under the age of eighteen, not fifteen years old and under the age of consent.

Defendant also testified that he would not have sex with anyone under eighteen.

Defendant’s next mention of sex confirms this: “Well. I could let you live here with

me and take care of you[.] . . . But we could not have sex till [sic] you was [sic] old

enough.” Defendant then reiterated his desire not to have sex with “Kelly” if he was

underage: “But I do not want to go to jail. . . . So I could not have sex till [sic] you was

[sic] old enough.”

 -4-
 STATE V. KELLER

 Inman, J., dissenting

 As pointed out by the majority, Defendant continued to interact with “Kelly”

after learning he was under eighteen. He did so, per his testimony, to “make sure

this person is okay[,]” because “when [‘Kelly’] started talking about [how] he was

living with his aunt and she didn’t want him, his parents [were] in jail, he was going

to run away, he was going to find the next available guy, I remember telling him

that’s dangerous, you know, you could get hurt.” His testimony continued:

 [DEFENDANT:] I still kept talking to [“Kelly”] because he
 said, “If you don’t quit talking to me, I’m going to go ahead
 and get somebody else.”

 I said, “No, no, no. Don’t do that.”

 So now I’m really concerned. You know, there’s crazy
 people out there.

 ....

 [DEFENDANT’S COUNSEL:] Okay. And after you had
 texted that, “We can wait until you are old enough,” who
 brought up the idea of any other sexual act or –

 [DEFENDANT:] Detective [Heavner] is the only one that
 brought up anything sexual.

 ....

 Sex was not on my mind at this time. The only thing that
 was on my mind was that this person was really going to
 go out and meet somebody else. Was he really without
 food? Was he really without clothes? Was he really in a
 situation where his aunt didn’t want him? His parents are
 in prison. If all this is true, it’s all the factors for danger.

 -5-
 STATE V. KELLER

 Inman, J., dissenting

 Following Defendant’s expression of his unwillingness to have sex with “Kelly”

as a minor because he did not want to go to prison, it was Detective Heavner, and not

Defendant, who re-initiated the discussion of sex. Ensuing responses from Defendant

certainly could be construed by a jury—which, unlike this Court, is not bound by any

presumption favorable to Defendant—to indicate sexual interest in “Kelly.” At trial,

however, Defendant offered non-sexual explanations for many of these comments,

which our precedents require us to take as true. Foster, 235 N.C. App. at 374, 761

S.E.2d at 215; Ott, 236 N.C. App. at 652, 763 S.E.2d at 533.

 Defendant’s text messages included a request for a picture of “Kelly’s” face,

which Defendant testified he asked for in order to try and verify “Kelly’s” age, and a

statement that “[w]e could do all you wanted to do if you was my boy[,]” which

Defendant described as offering “Kelly” a place to live without the fulfillment of any

sexual desires.5 At one point in the conversation, “Kelly” stated he wanted Defendant

to be the first man with whom he had sex; four messages later, Defendant replied,

“Ok. Well we can fix that. We will go slow[,]” a remark not inconsistent with an

intent to wait until “Kelly” was older.

 Shortly after Defendant’s message to “Kelly” that they would “go slow,” Officer

Heavner proposed meeting immediately. Defendant responded with an offer to meet

 5 As recounted supra, Defendant testified that he used the word “boy” with Detective Heavner
to describe men he takes care of, a relationship he explained elsewhere in his testimony as not
necessarily involving sex.

 -6-
 STATE V. KELLER

 Inman, J., dissenting

the following day. “Kelly” replied by texting: “Ok. . . . I want to perform oral sex on

[you] really bad for some reason can we do that[?]” Defendant demurred, texting he

did not want to talk about sex; he testified at trial that it was his practice to refrain

from talking about sex via text message on his phone because he found it vulgar. The

issue did not arise again until several messages later, when “Kelly” expressed a fear

that he might not be gay, and was therefore unsure if he should move in with

Defendant without having sex together first. Defendant responded that he had

previously said they could have sex; “Kelly” replied, “[y]ou said we could when I am

old enough for [you.]” Defendant once more requested that they not discuss sex

through text messages. That statement was followed by this exchange:

 [DETECTIVE HEAVNER:] You said [“]I said we could[”]
 so does that mean yes [because] if not I may have to find
 someone else first to see what its like[.]

 [DEFENDANT:] Yes[.]

 ....

 [DEFENDANT:] Don’t find anyone else. Please[.]

 [DETECTIVE HEAVNER:] Only if we can have oral sex
 and anal tomorrow so I will know, just give me a yes or no
 and I will shut up about it[.]

 [DEFENDANT:] Yes[.]

Defendant testified he made these statements because he did not want “Kelly,” in an

effort to escape a desperate home life, to find another man who might be dangerous,

 -7-
 STATE V. KELLER

 Inman, J., dissenting

and that he “just said ‘yes’ to shut [‘Kelly’] up.” Detective Heavner issued his

ultimatum after Defendant had warned “Kelly” that other men might try to harm

him. After the ultimatum, Defendant did not engage in any sexually explicit

conversation or discuss any sex acts with “Kelly,” despite Detective Heavner

repeatedly doing so; indeed, Defendant again asked “Kelly” to “[s]top talking about

sex stuff.”

 The text messages eventually returned to the topic of the logistics of meeting,

with Defendant agreeing to meet the following day around lunchtime. Defendant

testified that he agreed to that arrangement because it would offer him the chance:

 to sit down and speak with [“Kelly’s”] aunt and [a neighbor
 Detective Heavner had mentioned in an earlier message],
 [to] make sure everybody knew what was going on. If he
 did need a place, I would take him back. I had the room. I
 would give him a place to live and t[ake] care of him and
 provide[] him things.

 ....

 That’s why I wanted to talk to his aunt and the neighbor[.]

Following further discussion about picking up “Kelly,” Defendant travelled to

Lincolnton and was arrested at the meeting spot.

 II. ANALYSIS

A. Defendant’s Intent

 The majority holds that Defendant had the requisite intent to solicit a minor

for sex, so that an entrapment instruction was improper. The majority’s position,

 -8-
 STATE V. KELLER

 Inman, J., dissenting

however, is based on several assertions that are not supported by the evidence when

it is considered in the light most favorable to the Defendant, as required by the

applicable standard of review. Ott, 236 N.C. App. at 651-52, 763 S.E.2d at 533.

 First, the majority states that “after ‘Kelly’ told Defendant he was fifteen-

years-old and may be too young, Defendant continued to speak with Kelly[,]” later

“sen[ding] sexually explicit messages to someone he believed was underage[.]” The

evidence presented at trial, when considered in the light mandated by our precedents,

does not support this contention. Defendant testified that he initially believed he was

conversing with someone eighteen or older. When “Kelly” texted that he was not

eighteen, Defendant testified, he did not actually understand that “Kelly” was fifteen,

but was instead “under the impression” he was seventeen. Defendant testified that

he did not “sen[d] sexually explicit messages to someone he believed was underage,”

as asserted by the majority. Although the jury might not have believed this testimony

and rejected Defendant’s entrapment defense, our precedents require that, when

considering whether the instruction was mandated, i.e., whether the jury should

decide this issue, we must take Defendant at his word. Foster, 235 N.C. App. at 374,

761 S.E.2d at 215; Ott, 236 N.C. App. at 652, 763 S.E.2d at 533.

 Second, the majority writes that Defendant “attempted to meet ‘Kelly’ for the

purpose of engaging in sexual acts” and “[t]hereafter . . . readily agreed to have oral

and anal sex with ‘Kelly’ when they were to meet.” But Defendant testified that once

 -9-
 STATE V. KELLER

 Inman, J., dissenting

he suspected “Kelly” was under eighteen, he expressly refused to have sex with him

until he was older, ceasing further sexual comments until the subject was brought

back up by Detective Heavner. Although Defendant sent additional messages after

that point, those messages are not inconsistent with an intent to have sex only once

“Kelly” was of age. Defendant provided non-sexual explanations for many of those

texts. Defendant also testified that he did not attempt to meet “Kelly” “for the

purpose of engaging in sexual acts[,]” and that he only agreed to have sex with “Kelly”

to get him to “shut up” for fear that he would be left to a damaging home life or end

up in physical danger. The majority’s assertion that Defendant “readily agreed to

have oral and anal sex with ‘Kelly’ ” and travelled to Lincolnton for that purpose is

not supported by this evidence when considered in a light favorable to Defendant.

 This Court has previously held a defendant presented evidence sufficient to

merit an entrapment instruction where, according to his testimony, he first expressed

disinterest in committing the criminal act but was later induced by acts of law

enforcement that “involved emotional manipulation[,] including creating a false

relationship and then taking advantage of the defendant’s desire to maintain that

relationship.” Foster, 235 N.C. App. at 375, 761 S.E.2d at 215. Similarly, Defendant’s

testimony, considered in the light most favorable to him, establishes that he did not

“readily” assent to engage in sex with “Kelly” as a person under the age of sixteen.

Defendant testified in pertinent part:

 - 10 -
 STATE V. KELLER

 Inman, J., dissenting

 Sex was not on my mind at this time. The only thing [that]
 was on my mind was that this person was really going to
 go out and meet somebody else. Was he really without
 food? Was he really without clothes? Was he really in a
 situation where his aunt didn’t want him? His parents are
 in prison. If all this is true, it’s all the factors for danger.

We are required to accept as true Defendant’s testimony that he did not intend to

commit a crime prior to Detective Heavner’s inducement and only agreed to commit

the crime, to the extent he did so, once Detective Heavner “implant[ed] the criminal

design.” State v. Salame, 24 N.C. App. 1, 7, 210 S.E.2d 77, 82 (1974) (citation and

internal quotation marks omitted).

B. Predisposition

 I also disagree with the majority’s conclusion that, viewed in the light most

favorable to Defendant, the evidence shows he was predisposed to commit the crime

charged absent inducement by Detective Heavner. The majority characterizes the

evidence as showing that Defendant: (1) had a history of interacting with men on

Craigslist; (2) invited three such men to live with him in his home, including a

sixteen-year-old with whom he had sex; (3) continued to converse with “Kelly” after

Detective Heavner disclosed his age; (4) promised to take care of “Kelly” and later

agreed to have sex with him; and (5) acknowledged he had sex with men who

previously lived with him in his home. As recounted supra, this view simply overlooks

evidence favorable to Defendant.

 - 11 -
 STATE V. KELLER

 Inman, J., dissenting

 Most notably, Defendant did not testify that he had ever hosted or engaged in

sex with a sixteen-year-old in his home. Rather, he testified that more than three

decades earlier, when he was nineteen and living in another state, he and a sixteen-

year-old boy engaged in mutual fondling. Also, when considered in the light required

by our precedents, Defendant’s evidence shows that: (1) three adult men moved in

with Defendant after meeting him on Craigslist, only one of whom had sex with

Defendant; (2) Defendant has lived with four boyfriends, all over the age of eighteen,

including the one he met on Craigslist;6 (3) Defendant believed “Kelly” was seventeen,

not fifteen, and immediately refused sex with “Kelly” if he was under eighteen; (4)

Defendant’s offer to “take care of ‘Kelly’ ” did not necessarily include sex; and (5)

Defendant agreed to have sex with “Kelly” not with the intent to have sex with him,

but out of a concern that a refusal would leave “Kelly” in danger.

 The evidence in this case is in stark contrast to State v. Morse, 194 N.C. App.

685, 671 S.E.2d 538 (2009), the authority relied upon by the majority. Although the

majority correctly notes that the defendant in Morse, like Defendant here, “had

previously engaged in sexually explicit communications with other users in adults

only chat rooms and even met with one . . . to engage in sexual contact[,]” 194 N.C.

 6 I would not hold, as a matter of law, that a man’s prior sexual experiences with consenting
male partners, all above the age of consent, indicate that he is predisposed to engaging in sexual
activity with a child.

 - 12 -
 STATE V. KELLER

 Inman, J., dissenting

App. at 692, 671 S.E.2d at 543, that was but one factor in a multi-faceted analysis by

this Court:

 Furthermore, defendant admitted that he had previously
 chatted with underage juveniles. Defendant was familiar,
 not only with the ease with which an underage juvenile
 could access the adults only chat room, but also with the
 idea that other users can and often do falsely represent
 their names, age, and appearance. At trial, defendant
 admitted that he had looked at baywatch142000’s profile,
 which listed her age as “114” and included . . . “Actually
 14.” Defendant testified, however, that he looked at the
 profile merely to view baywatch142000’s photograph and
 thus initially overlooked her age. Defendant further
 contended that he was not thinking about age at all, but
 rather was in a “sexual mindframe” when chatting with
 baywatch142000.

 In spite of this testimony, defendant admittedly did not
 hesitate to initiate sexually charged conversation with
 baywatch142000 within the first few minutes of chatting,
 or to begin making arrangements to meet for sexual contact.
 Furthermore, defendant did not, at any time during their
 chats, express reluctance to meet with baywatch142000,
 despite baywatch142000’s repeated references to her age.
 Baywatch142000 made it clear that she was a fourteen-
 year-old high school student, a virgin, and interested in
 finding an older friend in order to gain sexual
 experience. . . . Throughout their chats, baywatch142000
 was, for the most part, merely responsive to defendant’s
 suggestions, while defendant took the more active role in
 both the sexually charged conversation and in planning
 their meeting.

Id. at 692-93, 671 S.E.2d at 543-44 (emphasis added).

 - 13 -
 STATE V. KELLER

 Inman, J., dissenting

 From that evidence, we determined that the defendant in Morse was not

entitled to an entrapment instruction on his solicitation of a child charge, the same

crime at issue in this case:

 Solicitation . . . elementally involves some impetus on
 defendant’s part, rather than mere acquiescence. . . . Our
 precedent indicates that a trial court may properly refuse
 to instruct a jury on entrapment when defendant required
 little urging before acquiescing to requests by undercover
 officers. Here, the record contains ample evidence which
 tends to show that defendant did more than merely
 acquiesce and cooperate with a plan formed by
 police. . . . Such initiative goes far beyond the mere
 compliance, acquiescence in, or willingness to cooperate
 which is sufficient to show predisposition.

Id. at 693-94, 671 S.E.2d at 544 (citations and quotation marks omitted) (emphasis

in original).

 Here, unlike the defendant in Morse, Defendant did not have advance notice of

“Kelly’s” age when he responded to Detective Heavner’s Craigslist ad; instead,

Defendant initially believed “Kelly” was at least eighteen based on Craigslist’s age

verification requirement. Nor did the State present any evidence Defendant had ever

before engaged in sexually explicit conversations with anyone underage; rather,

Defendant unreservedly testified he had never done so. Also unlike the defendant in

Morse, Defendant repeatedly stated his refusal to have sex with “Kelly” once he

suspected he was under eighteen. It was Detective Heavner, only after Defendant

expressed that refusal, who reintroduced sex into the conversation; it was also

 - 14 -
 STATE V. KELLER

 Inman, J., dissenting

Detective Heavner who repeatedly pressed Defendant to meet “Kelly.”7 Finally,

Defendant testified “sex was not on my mind” when he agreed to meet “Kelly” after

learning he was under eighteen, expressly disclaiming the “sexual mindframe” the

defendant in Morse admitted to holding.

 In short, Morse is distinguishable. Defendant’s evidence, taken in the light

most favorable to him, would allow a reasonable juror to infer that he was not

predisposed to commit the crime for which he was convicted, and that he assented to

Detective Heavner’s plan after repeated denials and only when he believed the

alternative would place “Kelly” in danger. Defendant was entitled to the entrapment

instruction so the jury could evaluate and determine for itself whether Defendant was

entrapped.

C. The Availability of the Defense

 The State argues that Defendant could not claim the entrapment defense

because he denied possessing the necessary criminal intent to convict him of soliciting

a child. The majority does not address this argument; because I would vacate

Defendant’s conviction and remand for a new trial, I address this issue.

 7 Detective Heavner first requested they meet before disclosing “Kelly’s” age, a request that
Defendant did not address. Detective Heavner again raised the issue after further conversation,
asking “[s]o when ya wanna do this[?]” When Defendant did not respond to the question a second time,
Detective Heavner reiterated “Kelly’s” desire to meet immediately: “Look I am serious if [you are], I
can leave[.] [A]ll I got to do is tell my aunt I found somewhere to go, she will be happy.” Defendant
responded that he was serious, to which “Kelly” replied “I really want to do this like today[.] . . .
Seriously come get me[.]” It was at that point that Defendant offered to meet “Kelly” the following
day.

 - 15 -
 STATE V. KELLER

 Inman, J., dissenting

 Both the State and Defendant cite State v. Neville, 302 N.C. 623, 276 S.E.2d

373 (1981), each asserting it supports their respective positions. In Neville, the

defendant denied committing the acts alleged and was denied an entrapment

instruction. 302 N.C. at 626, 276 S.E.2d at 375. Our Supreme Court rejected the

defendant’s argument that such a denial was error, holding “[t]he defense of

entrapment presupposes the existence of the acts constituting the offense. Where a

defendant claims he has not done an act, he cannot also claim that the government

induced him to do that act.” Id. (citations omitted). The Supreme Court distinguished

denials of acts from denials of criminal intent, plainly rejecting the argument

advanced by the State here: “[T]he entrapment defense is not inconsistent with the

defense of lack of mental state since the defense of entrapment itself is an assertion

that it was the will of the government, and not of the defendant, which spawned the

commission of the offense.” Id. (citation omitted); see also State v. Sanders, 95 N.C.

App. 56, 61, 381 S.E.2d 827, 830 (1989) (“[A] defendant who denies an essential

element which deals with intent but who admits committing the acts underlying the

offense with which he is charged may employ an entrapment defense.” (emphasis

added)).

 At trial, Defendant’s counsel acknowledged he had admitted to committing the

acts constituting the offense for which he was charged—i.e., exchanging messages via

computer regarding plans to engage in sex with “Kelly” and driving to Lincolnton to

 - 16 -
 STATE V. KELLER

 Inman, J., dissenting

meet him. He only denies possessing the requisite criminal intent to engage in a sex

act with a minor. Following Neville and Sanders, I would hold the State’s argument

on this question unavailing.

D. Prejudice

 Defendant has demonstrated that the trial court’s error in denying an

entrapment instruction prejudiced him. Almost two hours into deliberations and

after an initial request for reinstruction on the elements, the jury sent the following

note to the trial judge: “Please define intent to have sex with a minor. Does it matter

if the defendant’s intent is to have sex when the boy is underage or if his intent is to

wait until—is to wait to have sex until the boy is of age?” (Emphasis added). The trial

court, during a hearing outside the jury’s presence, told counsel that “what I would

tell them is . . . it would not be a violation of the law to have intent to have sex after

he’s of age.” When jurors returned to the courtroom, the trial court instructed them

as follows: “It would constitute a violation of the law to have intent with a boy who is

underage. It would not be a violation of the criminal code to . . . intend to have sex

with someone who is not underage.” Ten minutes later, the jury requested

reinstruction on the elements of the crime charged. Four minutes after that

reinstruction was given, the jury informed the trial court that it had reached a

verdict, which resulted in this rather irregular dialogue:

 THE COURT: . . . You have a unanimous decision?

 - 17 -
 STATE V. KELLER

 Inman, J., dissenting

THE FOREPERSON: We have made a decision.

THE COURT: And is it a unanimous decision?

THE FOREPERSON: It was not a unanimous decision.

THE COURT: Okay. And is it by majority
vote . . . ? Because the decision must be unanimous.

....

THE FOREPERSON: Oh, it was unanimous.

THE COURT: Okay.

THE FOREPERSON: I’m sorry.

....

THE COURT: . . . “Unanimous” meaning all 12 are in
agreement with this decision?

THE FOREPERSON: No. No.

JURORS: No. No.

THE FOREPERSON: I think we are confused.

THE COURT: All right. . . . [T]he decision must be
unanimous. If you have not completed your discussions,
then we need to decide when you are coming back because
we will be closing court this afternoon. There’s no
timetable. There’s no—

THE FOREPERSON: We’re done. I just—I think that
maybe we are misunderstanding what you’re trying to ask
us.

THE COURT: Well, the decision of whether or not an
individual is guilty or not guilty must be unanimous. Must

 - 18 -
 STATE V. KELLER

 Inman, J., dissenting

 be the decision that 12 believe guilty or 12 believe not
 guilty. That’s what we mean by “unanimous.”

 THE FOREPERSON: Oh. Then, no, we are not
 unanimous.

 THE COURT: Okay. Then I’m going to send you back to
 the jury room.

 ....

 So I’m not sure I understand where we are.

 THE FOREPERSON: Everyone has made their own
 personal decision.

The trial court then reiterated the necessity of a unanimous decision but recessed

court until the following morning. After more than an hour of deliberations the next

day, the jury returned a unanimous verdict of guilty.

 As noted above, Defendant admitted to the acts constituting the crime and only

denied possessing the requisite criminal intent. With Defendant’s mindset being the

only element at issue before it, the jury’s multiple requests for additional instructions

on the elements—and specifically as to Defendant’s intent—coupled with its apparent

difficulty in arriving at a unanimous verdict demonstrate “a reasonable possibility

that, had the error in question not been committed, a different result would have been

reached at the trial[.]” N.C. Gen. Stat. § 15A-1443 (2017).

 III. CONCLUSION

 - 19 -
 STATE V. KELLER

 Inman, J., dissenting

 Respecting the limitations of appellate review, I dissent not because I conclude

that Defendant has established the defense of entrapment, but because the law

requires us to take his testimony to be true for the limited purpose of determining

whether a jury might find that Defendant has proven that defense to its satisfaction.

Following controlling precedents, I would vacate Defendant’s conviction and remand

for a new trial.

 - 20 -