BERGER, Judge.
*527 On August 23, 2016, a Lincoln County jury found David Alan Keller ("Defendant") guilty of solicitation of a minor by computer or electronic device and appearing at a meeting location for the purpose of committing an unlawful sex act. Defendant timely appeals, arguing that the trial court erred when it did not submit the defense of entrapment to the jury. We find no error.
Factual and Procedural Background
On May 11, 2015, Detective Brent Heavner ("Detective Heavner") of the Lincolnton Police Department went undercover online as a fifteen-year-old boy with the fictitious name "Kelly." As part of a year-and-a-half-long operation targeting online sexual predators, "Kelly" posted a personal advertisement titled "Boy Needs a Man" on Craigslist's adults-only "Personal Encounters" section, which read:
Okay. I never, never did this so here it goes. I'm wanting to experience a man. Never had tried I but want to. I have been with a girl and I want to try a man. Am *581 posting here because I want a complete stranger so no one will find out about this. I would like an older man that is not shy and knows what to do because I will probably be a little nervous. I would prefer a pic and a number so we can, so we cannot use e-mail. I will be picky so be patient but would like to do this soon. You would have to come to me. Would like to try anything. And I am a white male open to anyone.
The next day, at 6:07 a.m., Defendant responded to "Kelly's" advertisement as follows:
Hey[.] I am a 44 white male looking for a young guy to take care of and spoil[.] I am 175 pounds, 32/32 pants, 6.5 cut, *528 DD free. If you would like to be a daddy's boy and have your every need provided for you let me know I am looking for a boy to treat very special.
At 10:52 a.m., "Kelly" responded, "whats your number and what do you like[?]" Defendant e-mailed his phone number. When "Kelly" did not answer immediately, Defendant sent the following three emails later that day:
2:43 p.m.: I sent you my number. I look like a 44 year old guy. Not fat and not ugly.
9:38 p.m.: Are u still needing a man. I am still looking for a boy[.]
9:51 p.m.: This man is still looking for his boy toy[.]
Over the next few days, "Kelly" and Defendant exchanged a series of text messages all detailing Defendant's desire for "Kelly" to live with him. After initial introductions, Defendant stated, "I could offer you a home. Car to drive[,] phone[,] clothes[, and] money to spend. Pretty much what ever you need." "I have had 3 boys. They never had to work and got everything they ever asked for[.]" When Defendant and "Kelly" exchanged photos (Detective Heavner used a photo from Google images), Defendant stated, "I would love to make you my boy," "I would take really good care of you," "I think you're a little hottie," and "I could have sex 5 times a day." "Kelly" responded that he could move in that day, but he was afraid that he may be too young for Defendant.
[Detective Heavner]: I may be too young but I am needing a place to go, my aunt is about to put me back in foster care and I will run away if she does[.]
[Defendant]: How old are u[?] If your 17 it's legal[.]
[Detective Heavner]: I am not quiet (sic ) 16 and actually 16 is the legal age[.]
[Defendant]: Send me a pic I can see your face please[.]
[Detective Heavner]: I am scared to show my face right now.
[Defendant]: Well. I could let you live here with me and take care of you. But we could not have sex till you was old enough[.] ... I do not want to go to jail[.] I had one boy I played with when he was 16 but turned 17 the next week[.]
*529 ....
[Defendant]: You know my son got on line and thought he was talking to a girl it turned out to be a cop and when he went to meet her he got arrested and went to jail for 3 years[.]
[Detective Heavner]: For real?
[Defendant]: Yes for real he really went to jail for 3 years and now has to register as a sex offender[.]
Knowing the consequences of talking online to a stranger and knowing that "Kelly" was not yet sixteen-years-old, Defendant continued the conversation, agreeing to have sexual relations with "Kelly."
[Detective Heavner]: I am very curious[.]
[Defendant]: Curious about what[?]
[Detective Heavner]: I don't know how to say it[.]
[Defendant]: Just say it. I won't judge you[.]
[Detective Heavner]: How do I know if I am[.] And if I come there and we can't be sexual it might be a mistake[.]
[Defendant]: I said we could[.]
[Detective Heavner]: You said we could when I am old enough for u[.]
[Defendant]: Well like I said don't want to talk through text. But will talk to you in person about it[.]
[Detective Heavner]: You said I said we could so does that mean yes cuz if not I *582 may have to find someone else first to see what its like[.]
[Defendant]: Don't find anyone else. Please[.]
[Detective Heavner]: Only if we can have oral sex and anal tomorrow so I will know, just give me a yes or no and I will shut up about it[.]
[Defendant]: Yes[.]
....
[Defendant]: I have been looking for a boy for a long time[.]
*530 After exchanging numerous texts, Defendant agreed to meet "Kelly" and take him back to Defendant's home. When Defendant arrived at the meeting location, officers were on scene and placed Defendant under arrest.
On August 18, 2016, Defendant was indicted for solicitation by computer or electronic device of a person believed to be fifteen or younger for the purpose of committing an unlawful sex act and appearing at the meeting location where he was to meet the person whom he believed was a child. At trial, Defendant testified that he began using Craigslist's personal advertisements in 2006. He stated that over the course of eleven years, he had met multiple men on the website and three even lived with him for extended periods of time. Defendant testified that he responded to "Kelly's" advertisement because he and his live-in companion were having problems and Defendant wanted to make him jealous. After repeatedly claiming that he just wanted to "make sure Kelly was okay," Defendant finally conceded that sex is a part of what he gets in return for his generosity.
On August 23, 2016, the jury found Defendant guilty as charged. On September 26, 2016, the trial court sentenced Defendant to ten to twenty months imprisonment and mandatory registration as a sex offender for thirty years. Defendant filed a petition for a writ of certiorari, which was granted by this Court. Defendant argues on appeal that the trial court erred when it failed to instruct the jury on entrapment.
Analysis
"Whether the evidence, taken in the light most favorable to the defendant, is sufficient to require the trial court to instruct on a defense of entrapment is an issue of law that is determined by an appellate court de novo." State v. Ott , 236 N.C. App. 648, 651, 763 S.E.2d 530, 532 (2014) (citation omitted). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment, for that of the lower tribunal." Id. at 651, 763 S.E.2d at 533 (citation and quotation marks omitted).
"In determining whether a defendant is entitled to a jury instruction on entrapment, the trial court must view the evidence in the light most favorable to the defendant." State v. Morse , 194 N.C. App. 685, 690, 671 S.E.2d 538, 542 (2009) (citation omitted). "Before a [t]rial [c]ourt can submit [an entrapment] defense to the jury there must be some credible evidence tending to support the defendant's contention that he was a victim of entrapment. ..."
*531 State v. Burnette, 242 N.C. 164, 173, 87 S.E.2d 191, 197 (1955) (citations omitted). "The issue of whether or not a defendant was entrapped is generally a question of fact to be determined by the jury, and when the defendant's evidence creates an issue of fact as to entrapment, then the jury must be instructed on the defense of entrapment." Ott , 236 N.C. App. at 651-52, 763 S.E.2d at 533 (purgandum ).
"Entrapment is the inducement of a person to commit a criminal offense not contemplated by that person, for the mere purpose of instituting a criminal action against him." State v. Davis, 126 N.C. App. 415, 417, 485 S.E.2d 329, 331 (1997) (citation omitted). "Entrapment is a complete defense to the crime charged." Morse, 194 N.C. App. at 689, 671 S.E.2d at 542 (citation and quotation marks omitted). The defendant has the burden of proving the affirmative defense of entrapment. State v. Luster , 306 N.C. 566, 579, 295 S.E.2d 421, 428 (1982).
"The defense of entrapment is available when there are acts of persuasion, trickery or fraud carried out by law enforcement officers or their agents to induce a defendant to commit a crime and when the origin of the criminal intent lies with the law enforcement agencies." State v. Hageman , 307 N.C. 1, 28, 296 S.E.2d 433, 449 (1982)
*583 (citations omitted). "We note that this is a two-step test and the absence of one element does not afford the defendant the luxury of availing himself of the affirmative defense of entrapment." Morse, 194 N.C. App. at 690, 671 S.E.2d at 542. Under this test, "[t]he defendant must show that the trickery, fraud or deception was practiced upon one who entertained no prior criminal intent." Hageman , 307 N.C. at 28, 296 S.E.2d at 449 (purgandum ).
"A clear distinction is to be drawn between inducing a person to commit a crime he did not contemplate doing, and the setting of a trap to catch him in the execution of a crime of his own conception. The determinant is the point of origin of the criminal intent." Morse, 194 N.C. App. at 690, 671 S.E.2d at 542. When analyzing whether a defendant was predisposed to commit the crime, our Supreme Court has stated: " '[w]illing' is a synonym of the word 'predisposed.' " Hageman, 307 N.C. at 26, 296 S.E.2d at 447 (citation omitted). Therefore, "[p]redisposition may be shown by a defendant's ready compliance, acquiescence in, or willingness to cooperate in the criminal plan where the police merely afford the defendant an opportunity to commit the crime." Id . at 31, 296 S.E.2d at 450-51 (citations omitted).
"It is well settled that the defense of entrapment is not available to a defendant who has a predisposition to commit the crime independent of governmental inducement and influence." Id. at 29, 296 S.E.2d at 449.
*532 The fact that officers or employees of the government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution, nor will the mere fact of deceit defeat a prosecution, for there are circumstances when the use of deceit is the only practicable law enforcement technique available. It is only when the [g]overnment's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play.
State v. Salame , 24 N.C. App. 1, 7, 210 S.E.2d 77, 81-82 (1974) (citation and quotation marks omitted) (emphasis added).
This Court was presented with a similar legal and factual scenario in State v. Morse . State v. Morse, 194 N.C. App. 685, 671 S.E.2d 538 (2009). In Morse , the defendant entered an adults-only online chat room and began speaking with an undercover law enforcement officer. Id. at 694, 671 S.E.2d at 539-41. As part of an undercover operation, the officer posted as a fourteen-year-old girl claiming that "she was inexperienced and looking for an older 'friend.' " Id. at 687, 671 S.E.2d at 540. When Morse went to meet the officer in person, he was arrested. Id. at 687, 671 S.E.2d at 540.
Morse appealed his conviction and argued that the trial court erred when it refused to submit the defense of entrapment to the jury. Id. at 689, 671 S.E.2d at 541-42. In concluding that the trial court did not err in not submitting the entrapment defense to the jury, the Morse Court held that "[a]lthough defendant did not have a criminal record, record of molestation, or record of other similar offensive acts, uncontroverted record evidence shows that defendant had previously engaged in sexually explicit communications with other users in adults only chat rooms and even met with one of those users to engage in sexual contact." Id. at 692, 671 S.E.2d at 543.
Here, Defendant failed to prove he was entitled to an instruction on entrapment. The evidence supports Defendant's predisposition and willingness to engage in the crime charged. Defendant responded to a posting entitled "Boy Needing a Man" with messages that (1) inquired if Kelly wanted to by a "daddy's boy ," [R.p.12] (2) stated Defendant was "looking for a boy ," [R.p.12] and (3) repeated that Defendant was "still looking for a boy " [R.p.13] when Kelly failed to respond quickly enough for Defendant. (Emphasis added). Even after "Kelly" told Defendant he was fifteen-years-old and may be too young [R.p.24], Defendant continued to speak with Kelly, and Defendant asked Kelly to send him a picture [R.p.24]. Defendant then sent sexually explicit *533 messages to someone he believed was fifteen years old and attempted to meet "Kelly" for the purpose of engaging in sexual acts. Thereafter, he readily agreed to have oral and anal sex with "Kelly" when they were to meet. *584 Additionally, Defendant failed to sufficiently demonstrate that he was not predisposed to committing the act. As in Morse , it is irrelevant that Defendant did not have a criminal record, never solicited a child for sex, never had sex with a child, or never brought a child into his home. Contrary to Defendant's assertion, Detective Heavner did not manipulate Defendant into the ongoing conversation, nor did he "actually implant[ ] the criminal design" in Defendant's mind. Salame, 24 N.C. App. at 7, 210 S.E.2d at 81-82. Detective Heavner merely afforded Defendant the opportunity to commit the offense in which he willingly engaged.
Moreover, Defendant had a nine-year history of responding to personal advertisements on Craigslist. He brought three of the men he had interacted with over the years into his home. One of the three, with whom he had engaged in sexual conduct, was sixteen-years-old. Furthermore, even after "Kelly" informed Defendant that he may be too young, Defendant continued to speak with him. After Defendant told Detective Heavner that he could come live with Defendant and that Defendant could take care of "Kelly," Defendant readily agreed to have oral and anal sex with "Kelly" the following day. At trial, Defendant even admitted that sex is a part of what he receives in return for his generosity to the people he met online.
Even when viewed in the light most favorable to Defendant, he has failed to demonstrate that he was entitled to an instruction on entrapment.
Conclusion
The trial court did not err when it declined to submit the defense of entrapment to the jury.
NO ERROR.
Judge TYSON concurs.
Judge INMAN dissents in separate opinion.