THE SUPREME COURT OF NORTH CAROLINA

No. 201A19

Filed 5 June 2020

STATE OF NORTH CAROLINA

v.

DAVID ALAN KELLER

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 828 S.E.2d 578 (N.C. Ct. App. 2019), affirming a judgment entered on 26 September 2016 by Judge Eric L. Levinson in Superior Court, Lincoln County. Heard in the Supreme Court on 9 March 2020.

*Joshua H. Stein, Attorney General, by Sherri H. Lawrence, Assistant Attorney General, for the State-appellee.*

*Glenn Gerding, Appellate Defender, by Emily Holmes Davis, Assistant Appellate Defender, for defendant-appellant.*

BEASLEY, Chief Justice.

In this case we consider whether the trial court erred by refusing to instruct the jury on the defense of entrapment. Defendant contends that he presented sufficient evidence of entrapment to allow the jury to decide the factual issue of whether he was entrapped. We agree. For the reasons stated below, we hold that the trial court committed prejudicial error by failing to instruct the jury on the defense of entrapment, and we reverse the decision of the Court of Appeals.

On 11 May 2015, Detective Brent Heavner, who worked as an undercover officer in an operation targeting online sexual predators for the Lincolnton Police Department, began posting online as a fifteen-year-old boy named "Kelly." Detective Heavner posted a personal advertisement titled "Boy Needs a Man" on the "Personal Encounters" section of Craigslist, which read:

> OK never did this so here it goes. I am wanting to experience a man, never have tried it but want to. I have been with a girl and now wanna [sic] try a man. I am posting here because I want a complete stranger so no one will find out about this. I would like an older man that is not shy and knows what to do cause [sic] I will be probably a little nervous. I would prefer a pic and a number so we can not use email. I will be picky so be patient. BUT would like to do this soon, u [sic] would have to come to me. would like to try anything I am a white male open to anyone[.]

The next day, defendant responded to Detective Heavner's post as follows:

> Hey[.] I am a 44 white male looking for a young guy to take care of and spoil[.] I am 175 lbs. 32/32 pants[,] 6.5 cut[,] DD free. If you would like to be a daddys [sic] boy and have your every need provided for you let me know I am looking for a boy to treat very special.

Detective Heavner responded to defendant's message asking, "whats [sic] your number and what do you like [?]" Defendant responded by e-mailing his phone number. When Detective Heavner failed to respond, defendant sent the following three e-mails later that day:

> 2:43 p.m.: I sent you my number. I look like a 44-year-old guy. Not fat and not ugly.
>
> 9:38 p.m.: Are u [sic] still needing a man. I am still looking for a boy[.]

9:51 p.m.: This man is still looking for his boy toy[.]

Detective Heavner responded the following morning and defendant stated, "I could offer you a home. Car to drive[,] phone[,] clothes[, and] money to spend. . . . Pretty much whatever you need. . . . I have had 3 boys. They never had to work and got everything they ever asked for[.]" Defendant asked Detective Heavner for a picture and his "stats" and he sent defendant an image obtained from Google images. In response to the pictures, defendant began complimenting Detective Heavner and offering to take good care of him. Defendant also told Detective Heavner about his three previous "boys." He told Detective Heavner that "Jeremy was 17. He was with me 3 years[,]" "[t]hen [K]aylen was 24 he was with me for 5 years. Then he got arrested for DWI three times[,]" and "I have had [D]ustin since 2008." They began to discuss when they could meet, but Detective Heavner expressed concern in the following text message exchange:

> [Detective Heavner]: I may be to young but I am needing a place to go, my aunt is about to put me back in foster care and I will run away if she does[.]
>
> [Defendant]: How old are u[?] If your [sic] 17 it's legal[.]
>
> [Detective Heavner]: I am a good kid, just my parents are shit bags and are in prison and I am the one suffering. I am not quiet [sic]16 and actually 16 is the legal age[.]
>
> [Defendant]: Send me a pic I can see your face please[.]
>
> [Detective Heavner]: I am scared to show my face right now[.]

[Defendant]: Well. I could let you live here with me and take care of you[.]

[Detective Heavner]: If ur [sic] willing it sounds good[.]

[Defendant]: But we could not have sex till you was [sic] old enough[.]

[Detective Heavner]: Ouch not good lol[.]

Defendant went on to state that he did not want to go to jail and told Detective Heavner that "[y]ou know my son got on line [sic] and thought he was talking to a girl it turned out to be a cop and when he went to meet her he got arrested and went to jail for 3 years and now has to register as a sex offender."

Prior to this conversation, Detective Heavner had not informed defendant of his age. Defendant continued the conversation and they made plans for defendant to pick him up the next day. When Detective Heavner told defendant that "I want to perform oral sex on u really bad for some reason can we do that[?]" defendant responded, "I don't want to talk about that stuff on here" and expressed his hope that Detective Heavner would understand. The conversation about problems at home continued, until Detective Heavner brought up sex again:

[Detective Heavner]: I am very curious[.]

[Defendant]: Curious about what[?]

[Detective Heavner]: I don't know how to say it[.]

[Defendant]: Just say it. I won't judge you[.]

[Detective Heavner]: How do I know if I am[.] And if I come there and we can't be sexual it might be a mistake[.]

. . . .

[Defendant]: I said we could[.]

. . . .

[Detective Heavner]: You said we could when I am old enough for u [.]

[Defendant]: Well like I said don't want to talk through text. But will talk to you in person about it[.]

[Detective Heavner]: You said I said we could so does that mean yes cuz if not I may have to find someone else first to see what its like[.]

. . . .

[Defendant]: Don't find anyone else. Please[.]

[Detective Heavner]: Only if we can have oral sex and anal tomorrow so I will know, just give me a yes or no and I will shut up about it[.]

[Defendant]: Yes[.]

After exchanging additional texts, defendant agreed to meet Detective Heavner and take him back to defendant's home the next day. When defendant arrived at the agreed upon location, officers placed defendant under arrest.

On 10 August 2015 defendant was indicted under N.C.G.S. § 14-202.3 for solicitation by computer or electronic device of a person believed to be fifteen years of age or younger for the purpose of committing an unlawful sexual act and appearing

at the meeting location where he was to meet the person whom he believed was a child.

Detective Heavner testified at trial, explaining to the jury how he made the post in the Casual Encounters section of Craigslist and how he had to confirm he was eighteen years old before making his post. Detective Heavner read the e-mails and text messages exchanged between himself and defendant for the jury.

Defendant's housemate, Curtis Miller, testified on behalf of the defense. Miller testified that he had known defendant for approximately twenty-five years and currently resided with him. Miller also testified that during the time Miller knew defendant he had brought home five or six men that were all over the age of eighteen. When the men lived with defendant, they had separate rooms and defendant helped them get jobs and get back on their feet.

Defendant also testified, stating that he began using Craigslist's personal advertisements in 2006. He used Craigslist because it was an adult website and he had previously received messages from minors when he used other online websites and chatrooms. He testified that in order to access the Casual Encounters section of Craigslist, he had agreed that he was over the age of eighteen, and he further explained that Craigslist required users' date of birth before allowing a post in the Casual Encounters section. He stated that over the course of ten years, he had met multiple men on the website and some of the men lived with him for extended periods.

Defendant testified that he was not romantically or sexually involved with every man he met online, or even every man who moved in with him.

With regard to Detective Heavner's age, defendant testified that at the time he gave Heavner his phone number, they had not discussed the matter "because you've got to be 18 to be on Craigslist." He also testified that he believed Detective Heavner was seventeen years old and he would not "mess with anybody" unless they were eighteen. He explained that when he was in his twenties he met Jeremy, who was seventeen at the time, and made Jeremy wait until he was eighteen to move in.

Defendant further testified that he did not include any sexual content in his text messages with Detective Heavner and explained that the detective was the only person during the encounter to allude to the possibility of sexual activity during their conversations. Defendant testified that he responded to Detective Heavner's advertisement because he and his live-in companion were having problems and defendant wanted to make him jealous. He further testified that "sex was not on my mind at this time" and that he was concerned Detective Heavner was in danger because his aunt was not providing for him. He discussed Detective Heavner with his housemate Curtis Miller and planned on letting him stay in the spare bedroom.

However, on cross-examination, defendant admitted that initially, his response to the Craigslist ad was sexual in nature, but that he thought Detective Heavner was over eighteen years old. He further testified that he did not recall Detective Heavner telling him that he was only fifteen years old. He also explained

that he did not want Detective Heavner finding anyone else because he was afraid whoever he met may hurt him. He testified that he agreed to have sex with Detective Heavner simply "to shut him up."

At the close of all of the evidence, defendant made a motion to dismiss, which the trial court denied. Defense counsel further argued for jury instructions on the defense of entrapment. The trial court ultimately denied defendant's request for jury instructions on entrapment, finding the defense inconsistent with defendant's argument that he did not travel to the meeting location for the purpose of having sex with "Detective Heavner.

Shortly after deliberations began, the jury asked for the elements of the offense and some of the State's evidence. Approximately two hours later the jury returned with another question, asking the court, "Please define intent to have sex with a minor. Does it matter if the defendant's intent is to have sex when the boy is underage or if his intent is to wait until—is to wait to have sex until the boy is of age?" The trial court instructed the jury that "[i]t would constitute a violation of the law to have intent with a boy who is underage. It would not be a violation of the criminal code to have—to intend to have sex with someone who is not underage." Later that afternoon, the jury asked for the elements of the offense again. Shortly thereafter the jury indicated it had reached a verdict. However, when the trial court asked the foreperson if there was a unanimous decision, the foreperson indicated that it was not a unanimous verdict and that everyone had "made their own personal decision."

The jury returned for further deliberations the following day, and on 23 August 2016, it found defendant guilty of the offense charged. The trial court sentenced defendant to ten-to-twenty-one months' imprisonment and mandatory registration as a sex offender for thirty years. Defendant filed a petition for a writ of certiorari, which was granted by the Court of Appeals. Defendant argued on appeal that the trial court erred when it failed to instruct the jury on entrapment.

In a divided opinion issued 21 May 2019, the Court of Appeals held that the refusal to instruct on entrapment was not error because the evidence failed to support the instruction. *State v. Keller*, 828 S.E.2d 578, 583–84 (N.C. Ct. App. 2019). The majority concluded that defendant failed to show his entitlement to an entrapment instruction for two reasons: (1) the evidence showed that he was willing to engage in criminal activity; and (2) he failed to show that he did not have a predisposition to commit the act. *Id.* The Court of Appeals noted that defendant repeatedly used the word "boy" when communicating with Detective Heavner and continued to speak with him after he told defendant he was fifteen years old. *Id.* The court ultimately held that Detective Heavner simply gave defendant the opportunity to commit the crime, in which defendant willingly engaged. *Id.* at 584. Because the majority's conclusion that defendant was predisposed to commit the crime was dispositive, it did not address the other issues raised on appeal.

Arguing that the majority failed to consider the evidence in the light most favorable to defendant and to accept defendant's testimony as true as required by the

applicable standard of review, the dissenting judge would have concluded that defendant demonstrated his entitlement to the entrapment instruction. *Id.* at 587–90 (Inman, J., dissenting). The dissenting judge further opined that the State's argument—that defendant was not entitled to the entrapment defense because he denied elements of the crime—was unavailing. *Id.* at 590. Finally, the dissenting judge asserted that defendant showed he was prejudiced by the trial court's denial of an entrapment instruction. *Id.* at 590–91. Based on the dissent, defendant filed notice of appeal on 25 June 2019.

Analysis

The issue before this Court is whether the trial court committed prejudicial error by failing to instruct the jury regarding the defense of entrapment. Resolution of that issue requires this Court to determine whether defendant was entitled to entrapment jury instructions, whether those instructions were impermissibly inconsistent with defendant's other theories of defense, and whether defendant was prejudiced by the trial court's failure to give the instructions.

I.    *Entrapment Instructions*

"The first duties of the officers of the law are to prevent, not to punish crime. It is not their duty to incite to and create crime for the sole purpose of prosecuting and punishing it." *State v. Stanley*, 288 N.C. 19, 29, 215 S.E.2d 589, 595 (2010) (citation omitted). Thus, "[th]e defense of entrapment is available when there are acts of persuasion, trickery or fraud carried out by law enforcement officers or their agents

to induce a defendant to commit a crime and when the criminal intent lies with the law enforcement agencies." *State v. Hageman,* 307 N.C. 1, 28, 296 S.E.2d 438, 449 (1982) (citing *State v. Walker,* 295 N.C. 510, 246 S.E.2d 748 (1978)). Entrapment is a complete defense to the crime charged. *See State v. Wallace*, 246 N.C. 445, 447, 98 S.E.2d 473, 474 (1957) ("The law of entrapment is that it not only may, but it does constitute a defense.") Defendants have the burden of proving the defense of entrapment "to the satisfaction of the jury" and the burden does not shift to the prosecution to prove predisposition beyond a reasonable doubt. *Hageman,* 307 N.C. at 28; 296 S.E.2d at 448.

The crucial inquiry by this Court is whether law enforcement or the defendant created the criminal intent. If a defendant has a "predisposition to commit the crime independent of governmental inducement and influence," the origin of the criminal intent lies with the defendant and the defense of entrapment is unavailable. *Id.* at 29, 296 S.E.2d at 449. Predisposition may be shown by "a defendant's ready compliance, acquiescence in, or willingness to cooperate in the criminal plan where the police merely afford the defendant an opportunity to commit the crime." *Id.* at 31, 296 S.E.2d at 450 (citations omitted).

Generally, the issue of whether a defendant is entrapped is a question of fact to be resolved by the jury. *State v. Hipp* 245 N.C. 205, 207; 95 S.E.2d 452 454 (1956) ("It is neither the function of the trial court nor this Court to say whether the defendant's story is true or false. That is the jury's function."). A defendant is entitled

to jury instructions on the defense of entrapment if he presents "some credible evidence tending to support the defendant's contention that he was a victim of entrapment." *State v. Burnette*, 242 N.C. 164, 173, 87 S.E.2d 191, 197 (1955). In order to determine whether defendant presented "some credible evidence," we consider whether defendant has presented sufficient evidence to permit a jury to reasonably infer that he was entrapped. *See Walker*, 295 N.C. at 515, 246 S.E.2d at 751 (concluding that defendant's evidence was "simply insufficient to permit a jury to infer that any undue persuasion, trickery or fraud was practiced by government agents upon defendant to induce him").

Here, we do not determine defendant's guilt or weigh the credibility of his testimony; rather, we consider whether defendant met the threshold burden of producing "some credible evidence" of each element of entrapment.

When making this determination, we view the evidence in the light most favorable to the defendant, *see State v. Moore,* 363 N.C. 793, 796, 688 S.E.2d 447, 449 (2010); *State v. Mash,* 323 N.C. 339, 348 372 S.E.2d 532, 537 (1988), and we take the defendant's testimony as true, *see Moore,* 363 N.C. at 796, 688 S.E.2d at 449 (citing *State v. Hipp,* 245 N.C. 205, 95 S.E.2d 452 (1956) ("[I]f defendant's evidence, taken as true, is sufficient to support an instruction . . . it must be given[.]"); *State v. Ott,* 236 N.C. App. 648, 652, 763 S.E.2d 530, 533 (quoting *State v. Foster,* 235 N.C. App. 365, 374, 761 S.E.2d 208, 215 (2014)) ("[F]or purposes of the entrapment issue, we must assume that [the] defendant's testimony is true[.]"). Discrepancies in

defendant's evidence or contradictory evidence offered by the State do not bar the availability of this defense. *See State v. Dooley,* 285 N.C. 158, 163, 203 S.E.2d 815, 818 (1974) (noting in a self-defense case, "[w]here there is evidence that defendant acted in self-defense, the court must charge on this aspect, even though there is contradictory evidence by the State or discrepancies in defendant's evidence"). Therefore, it is not necessary that this Court find defendant's evidence persuasive on its merits—we need only find that, giving the defendant the benefit of every doubt and assuming the veracity of his testimony, a reasonable jury could do so.

The evidence here, viewed in the light most favorable to defendant and assuming the truth of his testimony, is sufficient to allow a reasonable juror to conclude that defendant was not predisposed to commit the crime and the criminal intent was placed in defendant's mind by Detective Heavner.[1] Defendant's conduct prior to responding to the Craigslist posting does not show predisposition to commit sexual activity with a minor. No evidence was introduced that defendant had ever engaged in sexual activity with an underage child. Rather, defendant's evidence showed that he had a history of interacting with adult men through Craigslist and he often invited those men to live with him. He further testified that not all of his interactions through Craigslist were sexual in nature, and that he did not have sexual

---

[1] Here, it is uncontested whether Detective Heavner performed an act of persuasion, trickery, or fraud. Detective Heavner's conduct constituted an act of trickery because he testified that he had been working on an undercover operation on Craigslist for approximately 18 months and would "pretend to be either a 14-year-old girl, 14-year-old boy, or 15-year-old boy."

relations with every man that lived with him. While defendant did acknowledge "mutual fondling" with a sixteen-year-old when defendant was nineteen years old, such an encounter is not illegal in North Carolina. *See* N.C.G.S. § 14-27.30 (2019) ("A defendant is guilty of a Class B1 felony if the defendant engages in a sexual act with another person who is 15 years of age or younger and the defendant is at least 12 years old and at least six years older than the person[.]") Defendant's evidence, which we must view in the light most favorable to him, indicates nothing more than consensual sexual activity with same-sex partners legally capable of consent. We cannot conclude that such evidence demonstrates a predisposition to engaging in sexual activity with a child.

Defendant testified that he believed Detective Heavner to be eighteen years old when they began communicating because Craigslist required age verification prior to allowing posts in the Casual Encounters forum. Therefore, none of the communications made by defendant prior to Detective Heavner revealing his age can show predisposition to commit the crime charged. Once defendant became aware of Detective Heavner's age, he repeatedly stated that they would have to wait until Detective Heavner could give legal consent before the two could engage in sexual intercourse. After defendant refused to have sex with Detective Heavner due to his age, Heavner repeatedly shifted the conversation back towards the topic of sexual activity. Defendant's testimony indicates that he relented to Detective Heavner's requests only after he threatened to meet someone else with whom to engage in

sexual activity if defendant was unwilling to participate. Defendant testified that he was concerned that Detective Heavner would meet with someone else who could hurt or kill him. Taking defendant's testimony as true, defendant presented evidence which a reasonable juror could find credible to demonstrate that he did not have a willingness or predisposition to engage in sexual activity with a minor, but had a desire to protect Detective Heavner from potential danger.

## II.    *Inconsistent Theories*

Having determined that defendant presented sufficient evidence to warrant an entrapment instruction, we turn now to whether defendant's claim that he was entrapped is prohibitively inconsistent with defendant's other assertions. Generally, "[w]here a defendant claims he has not done an act, he also cannot claim that the government induced him to do that act." *State v. Neville*, 302 N.C. 623, 626, 276 S.E.2d 373, 374 (1981). Thus, a defendant cannot simultaneously deny committing the criminal *act* and also raise the defense of entrapment. The defense of entrapment is available, however, if "the State's own evidence raises an inference of entrapment" or if "the defendant denies the intent required for the commission of the offense." *Id.* at 626, 276 S.E.2d at 374.

This Court's holding in *Neville* is instructive here. In *Neville,* the defendant was charged with possession with intent to sell a controlled substance after he sold drugs to an undercover SBI agent. *Id.* at 625, 276 S.E.2d at 374–5. The defendant testified at trial, denying the act of possessing drugs or giving the undercover agent

any drugs. *Id.* Defendant testified that he and another individual, an informant working with the undercover agent, had conspired to trick the undercover agent into believing that defendant had purchased LSD with funds provided by the undercover agent when in fact the informant already possessed the LSD. *Id.* On appeal, the defendant argued that he was entitled to an entrapment instruction because, although he denied actually possessing the LSD, he did not deny participating in the scheme that gave the appearance of his having sold drugs to the informant. *Id.* at 625, 276 S.E.2d at 374. This Court held that the defendant's denial of having possessed or sold the controlled substance precluded the entrapment instruction. *Id.* at 626, 276 S.E.2d at 374. However, the Court went on to distinguish between a denial of the criminal act—the *actus reus*—and the denial of the criminal intent—the *mens rea*. We reasoned that the defense of entrapment remains available despite the defendant's denial of the culpable *mens rea* because "the defense of entrapment itself is an assertion that it was the will of the government, and not of the defendant, which spawned the commission of the offense." *Id.* at 626, 276 S.E.2d at 375.

Here, the delineation between the criminal act and the criminal intent is less clear. Defendant was charged and convicted of soliciting a minor by computer to commit an unlawful sex act, which provides:

> A person is guilty of solicitation of a child by a computer if the person is 16 years of age or older and the person knowingly, with the intent to commit an unlawful sex act, entices, advises, coerces, orders, or commands, by means of a computer or any other device capable of electronic data

storage or transmission, a child who is less than 16 years of age and at least five years younger than the defendant, or a person the defendant believes to be a child who is less than 16 years of age and who the defendant believes to be at least five years younger than the defendant, to meet with the defendant or any other person for the purpose of committing an unlawful sex act.

N.C.G.S. § 14-202.3. This offense includes multiple elements relating to a defendant's state of mind. Defendant denied that he intended to commit an unlawful sexual act; that he had knowledge Detective Heavner was under sixteen years old; and that his purpose in meeting Detective Heavner was to commit an unlawful sex act. Each of these assertions relates to defendant's state of mind or criminal intent.

Unlike in *Neville*, in which the defendant denied the *actus reus* of the criminal activity, defendant here denies only his criminal intent—the *mens rea*. He did not deny that he communicated with Detective Heavner online or that he drove to meet with Heavner but only that his intentions in doing so were criminal. Consistent with *Neville,* we hold that defendant's arguments at trial were consistent with the defense of entrapment and should not bar the availability of the defense.

## III.   *Prejudice*

Under N.C.G.S. § 15A-1443(a) (2019), a criminal defendant is prejudiced by non-constitutional errors when "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial[.]" As previously discussed, defendant presented substantial evidence that might

allow a reasonable juror to find that it was Detective Heavner, rather than defendant, who repeatedly demanded that defendant agree to participate in sexual activity.

The jury's questions to the trial court further support a finding of prejudice. The jury returned with a question about defendant's intent, asking the trial court to define intent and whether it mattered if defendant intended to wait to have sex until the victim was of legal age. This question shows that at least part of the jury's deliberation focused on whether defendant had the requisite criminal intent, and the central inquiry for entrapment in this case is whether the criminal intent was originated by defendant or law enforcement. An entrapment instruction would have allowed the jury to determine whether that criminal intent originated in the mind of defendant or Detective Heavner. This question, combined with defendant's testimony, shows there is a reasonable *possibility* that a different result would have been reached had the jury been instructed on entrapment. We therefore conclude that the trial court's failure to instruct the jury on entrapment was prejudicial and defendant is entitled to a new trial.

REVERSED AND REMANDED.

Justice NEWBY dissenting.

The crucial event in this case is the moment defendant learned his prospective sexual partner was underage. Once he learned that fact, he did not end his pursuit. Instead, he continued his undertaking to the point of driving to pick up his young victim. His actions demonstrate his predisposition to pursue such an illegal sexual encounter. Defendant nonetheless claims that he was entrapped by law enforcement. The majority takes defendant at his word and blinds itself to the mountain of uncontested evidence that shows that defendant was predisposed to commit the offense. The majority thus removes from our case law the requirement that a defendant must present sufficient credible evidence of entrapment. This case presents two issues: (1) whether defendant admitted that he committed all the elements of the offense, as he must admit if he wants to assert an entrapment defense; and (2) whether defendant presented sufficient credible evidence that he was not predisposed to solicit sex with someone under sixteen years of age. Defendant has done neither. He is therefore not entitled to a jury instruction on the defense of entrapment. I respectfully dissent.

Tragically, some adults use the internet to identify potential child victims and illegally entice them into engaging in sexual encounters. To address this societal problem, Detective Brent Heavner of the Lincolnton Police Department posed as a

boy named "Kelly"[1] as part of an undercover operation and posted the following advertisement, titled "boy needing a man – m4m," in Craigslist's "Casual Encounters" section:

> OK never did this so here it goes. I am wanting to experience a man, never have tried it but want to. I have been with a girl and now wanna try a man. I am posting here because I want a complete stranger so no one will find out about this. I would like an older man that is not shy and knows what to do cause I will be probably a little nervous. I would prefer a pic and a number so we can not use email. I will be picky so be patient. BUT would like to do this soon, u would have to come to me. [W]ould like to try anything I am a white male open to anyone[.]

Defendant responded to the advertisement the next day describing himself, including his genitalia, and stating that he was "looking for a boy to treat very special."[2] He admits he was looking for a sexual encounter. Defendant soon gave Kelly his phone number, and the two began communicating by text message. Defendant reiterated to Kelly that he was looking for "a boy to take care of and spoil." He also asked Kelly for a picture and for Kelly's "stats." Defendant told Kelly he would buy him all sorts of things and that, in exchange, Kelly would "make [defendant] happy." As the conversation continued, defendant informed Kelly that he had hosted multiple live-in partners in the past and that he was tired of his current partner. After Kelly sent a photo, defendant complimented Kelly's appearance multiple times and spoke of his

---

[1] Detective Heavner is most often referred to in this opinion as "Kelly," the name of the child alias.

[2] Defendant identified himself as a forty-four-year-old male. It was later determined that he was fifty-one years of age.

ability to have sex frequently.

Kelly soon informed defendant that he was under sixteen years of age. Defendant nevertheless continued the conversation. He first told Kelly that Kelly could live with him, but that they could not have sex until Kelly "was old enough." Defendant continued to ask for another picture of Kelly but also expressed his concern that he did not want to go to jail. Specifically, defendant explained that he did not want to end up like his son, who was imprisoned for three years after attempting a liaison with someone he thought was "a girl," but was actually a law enforcement officer posing as a girl online.

Kelly continued to steer the conversation to sexual themes, and defendant continued responding. Kelly explained that he had only had sex with "[two] girls" and that he wanted defendant to be the first man with whom he had sex. Defendant responded "[o]k. Well we can fix that. We will go slow." They then agreed that they would meet the following day. As Kelly continued to talk about having sex with defendant, defendant explained that he did not "want to talk about that stuff [by text message]."

Nevertheless, later in the conversation defendant became more explicit about his willingness to have sex with Kelly. When Kelly suggested that it might be a mistake for him to meet with defendant if they could not "be sexual," defendant responded "I said we could." After Kelly sought clarification, defendant told him "[w]ell like I said [I] don't want to talk through text. But will talk to you in person

about it." Finally, Kelly issued an ultimatum, asking defendant for a direct answer as to whether they could have sex, and stating that he "may have to find someone else first" if they could not. To this, defendant simply responded "[y]es." Kelly then specifically asked if they could "have oral sex and anal" the next day. Again, defendant responded "[y]es."

Throughout the rest of their conversation, defendant resisted further discussions about sex over text message. But he moved forward with the plan to pick up Kelly the next day, all the while giving Kelly compliments like "[y]ou['re] the prettiest boy I ever saw" and "[y]ou['re] just what I have been looking for." The next day, defendant drove to pick up Kelly at a location Kelly selected and was arrested at the scene.

Defendant was tried for solicitation by computer of a person believed to be under the age of sixteen for the purpose of committing an unlawful sex act and appearing at a meeting location. *See* N.C.G.S. 14-202.3(a), (c)(2) (2019). The trial court denied defendant's request for a jury instruction on the defense of entrapment, and defendant was convicted and sentenced to ten to twenty-one months imprisonment. The Court of Appeals upheld the trial court's decision not to give a jury instruction on the defense of entrapment.

To assert the defense of entrapment, a defendant must first admit that he committed all the acts that are elements of the charged offense. As this Court said in *State v. Neville*, "it is inconsistent for [a] defendant to assert on the one hand that he

did not do certain acts and then to insist that the government induced him to do the very acts which he disavows doing." 302 N.C. 623, 625, 276 S.E.2d 373, 375 (1981). The Court in *Neville* went on to clarify that a defendant may still assert the defense of entrapment if he "denies the *intent* required for the commission of the offense." *Id.* at 626, 276 S.E.2d at 375 (emphasis added). The Court explained that "the entrapment defense is not inconsistent with the defense of lack of mental state since the defense of entrapment itself is an assertion that it was the will of the government, and not of the defendant, which spawned the commission of the offense." *Id.* This limited exception of intent thus does not apply to all underlying facts about what was going on in a defendant's mind at the time the offense was committed. Instead, it only applies to the intent required to commit the acts of the charged offense.

Defendant in this case cannot assert the defense of entrapment because he has not admitted to all the elements of the charged offense. Defendant was charged with soliciting sex with a child by computer and appearing at a meeting location. To be found guilty of this offense, a defendant must, among other things, solicit sex with someone the defendant believes to be under sixteen years of age using a computer, with the intent to commit an unlawful sexual act, and appear at a meeting location.[3]

---

[3] Subsection 14-202.3(a) provides that "[a] person is guilty of solicitation of a child by a computer if the person is 16 years of age or older and the person knowingly, with the intent to commit an unlawful sex act, entices, advises, coerces, orders, or commands, by means of a computer or any other device capable of electronic data storage or transmission, a child who is less than 16 years of age and at least five years younger than the defendant, or *a person the defendant believes to be a child who is less than 16 years of age* and who the defendant believes to be at least five years younger than the defendant, to meet with the defendant or any other person for the purpose of committing an unlawful sex act." (Emphasis added). The

The jury was therefore instructed that to find defendant guilty, it had to find beyond a reasonable doubt (1) that defendant "was [sixteen] years of age or older"; (2) that defendant "enticed and/or advised by means of [an electronic device] a person [defendant] believes to be . . . less than [sixteen] years old and at least five years younger than [defendant], to meet with the defendant for the purpose of committing an unlawful sex act"; (3) that defendant "acted knowingly with the intent to commit an unlawful sex act"; and (4) that defendant "actually appeared at the meeting location." The jury returned a guilty verdict.[4]

As the majority emphasizes, defendant still maintains that he did not know Kelly was under the age of sixteen. But belief that the intended victim is under the age of sixteen is an element of the offense charged against defendant. Thus, under North Carolina law, defendant cannot consistently claim both that he did not know that Kelly was under the age of sixteen and that the government induced him to solicit sex with someone defendant knew was underage.

The majority wrongly decides that defendant's knowledge of Kelly's age amounts to a denial of intent, which *Neville* allows to be asserted alongside the

---

accused is guilty of a Class G felony if, in addition to those things, he also appears at a meeting location. N.C.G.S. § 14-202.3(c)(2).

[4] The majority focuses on certain pieces of evidence that, if viewed in isolation, might suggest that defendant had no intent to engage in sexual conduct with Kelly. However, defendant made that precise argument to the jury, and the jury rejected it. The jury found that defendant had the requisite intent. Thus, this Court may not now reconsider whether defendant had such intent; it may only consider whether that intent was purely implanted by law enforcement, or whether defendant was predisposed to possess it.

defense of entrapment. Knowledge of the victim's age is not, however, the sort of mental state to which *Neville* was referring. *Neville* explains that only *intent* to commit the necessary acts for the offense falls into this category. 302 N.C. at 626, 276 S.E.2d at 375 (referring to instances in which "the defendant denies the *intent* required for the commission of the offense" (emphasis added)). A defendant may only contest this type of mental state alongside an entrapment defense because, as the *Neville* Court explained, to claim entrapment is essentially to claim "that it was the *will* of the government, and not of the defendant, which spawned the commission of the offense." *Id.* (emphasis added).

In other words, in this case, defendant could only deny one of the four parts of the jury instruction and still maintain the defense of entrapment—the requirement that he "acted knowingly *with the intent* to commit an unlawful sex act." (Emphasis added.) He can deny he intended to have sex. But he cannot deny that he was at least sixteen years of age, *that he enticed someone to meet who he knew was under sixteen years of age*, or that he appeared at a meeting location. Because defendant denies knowledge of Kelly's age, he cannot assert the defense of entrapment.

If, instead, a defendant admits to the elements of the charged offense, "[t]he defense of entrapment is available when there are acts of persuasion, trickery or fraud carried out by law enforcement officers or their agents to induce a defendant to commit a crime and when the origin of the criminal intent lies with the law enforcement agencies." *State v. Hageman*, 307 N.C. 1, 28, 296 S.E.2d 433, 449 (1982).

A defendant is not entitled to a jury instruction on the defense of entrapment simply by showing that law enforcement engaged in deceptive behavior. *Id.* A defendant must also show "that the trickery, fraud or deception was *'practiced upon one who entertained no prior criminal intent.'* " *Id.* (quoting *State v. Stanley*, 288 N.C. 19, 28, 215 S.E.2d 589, 595 (1975)). Thus, as this Court has explained, if a defendant was "predisposed" to commit the criminal conduct, the defense of entrapment is not available to him. *State v. Luster*, 306 N.C. 566, 579, 295 S.E.2d 421, 428 (1982). "[M]erely providing the *opportunity* for one predisposed to criminal conduct does not constitute entrapment." *Id.* (emphasis added).

Moreover, our precedent shows that a defendant is not entitled to a jury instruction on the defense of entrapment even if the opportunity law enforcement presents to commit a crime is a particularly enticing option. In *Luster*, law enforcement set up an entire business front and offered people money for stolen goods. 306 N.C. at 568, 295 S.E.2d at 422. The defendant was charged after he sold multiple stolen vehicles to undercover law enforcement officers. *Id.* at 569, 295 S.E.2d at 423. The defendant later claimed he was entrapped, testifying that he had not been in any criminal trouble other than an unrelated misdemeanor six or seven years before and that he did not know the vehicles were stolen. *Id.* at 570, 579, 295 S.E.2d at 424, 428. Nevertheless, this Court went on to hold that he was not entitled to an entrapment instruction. *Id.* at 579, 295 S.E.2d at 428. The Court explained that the key inquiry is whether the defendant was predisposed to the criminal activity, not merely whether law enforcement created a seemingly convenient opportunity for the

defendant to commit the criminal activity. *Id.* The Court thus did not consider the defendant's evidence of entrapment to be sufficient because other evidence plainly contradicted it—the defendant bragged to law enforcement about dealing in stolen vehicles, and he claimed he had inside contacts at a car dealership. *Id.* at 575, 295 S.E.2d at 426. This was so even though the defendant claimed he was paid $400 by law enforcement officers to bring them more stolen vehicles. *Id.* at 581, 295 S.E.2d at 429. In the Court's words, the "evidence overwhelmingly refute[d] [the] defendant's contention [that he was induced by law enforcement to commit the offense]." *Id.*

*Luster* therefore reveals that defendant here must show more than the fact that law enforcement's actions helped persuade him to commit the offense. He must provide sufficient evidence that he was not predisposed to intend to engage in sexual conduct with Kelly.

*Luster* thus also illuminates the proper standard of review. When a defendant raises the defense of entrapment, the trial court looks at all the evidence in the light most favorable to the defendant. *Id.* at 572, 295 S.E.2d at 425. But the court should not ignore concrete contradictory evidence. The defendant has the burden of showing that "credible" and "sufficient" evidence supports all the elements of entrapment. *Id.* at 571–72, 295 S.E.2d at 424–25.

The record here does not support defendant's claim of entrapment. The evidence in this case instead shows that law enforcement merely provided the apparent opportunity for defendant to commit criminal acts he was predisposed to

commit. Defendant admitted that he had sexual intentions when he began communicating with Kelly. It is not a crime to seek sexual relations online. However, the telling point is what defendant did after he learned of Kelly's age. The evidence shows defendant maintained the intent to pursue a sexual encounter even after he learned that Kelly was underage. If defendant was not predisposed, he would have terminated the conversation.

Once Kelly responded to defendant and eventually revealed that he was fifteen years of age, initially defendant expressed that the two of them would have to wait until Kelly was older to have sex. Nevertheless, defendant did not end the conversation there. Instead, he continued to respond to Kelly even when Kelly repeatedly turned the conversation to sexual themes. Multiple times when Kelly brought up the possibility of the two of them having sex, defendant simply said that he did not want to talk about it over text message. The reasonable explanation of defendant's reluctance to discuss specifics over text message is that defendant wanted to avoid posting additional evidence of his criminal intent. Indeed, that explanation is further supported by defendant's statements expressing that he did not want to end up like his son, who was imprisoned for a similar offense.

In any event, defendant was unable to consistently conceal his intent; after Kelly said that it "might be a mistake" for him to meet with defendant if they could not have sex, defendant replied "I said we could." And when Kelly then responded that he thought defendant said they "could [only have sex] when [Kelly was] old

enough," defendant reiterated that he did not want to "talk through text" *but would talk to Kelly in person about it*.

Defendant soon demonstrated his intent even more explicitly, after Kelly stated that he may have to "find someone else" if defendant would not promise to have sex with him. Kelly told defendant that he would meet him "[o]nly if [they could] have oral sex and anal [sex the next day]," and told defendant to "just give [him] a yes or no and [he would] shut up about it." Defendant simply replied "[y]es." The reasonable understanding of defendant's text conversation with Kelly is that defendant began with, and throughout the conversation maintained, the intent to engage in sexual conduct with Kelly.

Defendant's limited evidence to the contrary is too weak to show that he was not predisposed to seek sexual conduct with the underage Kelly. In other words, defendant has not met his burden of showing sufficient credible evidence that he had no criminal predisposition. Defendant claims that he only agreed to have sex with Kelly because he was afraid that, if he did not, Kelly would seek to meet with someone else and potentially be harmed. His alleged fear presumably was in part the result of Kelly's statements that his aunt did not want to care for him and that he would search elsewhere if defendant did not agree to have sex.

But this evidence does not show that defendant had no predisposition to seek sex with Kelly. More likely, the evidence reveals the *strength* of defendant's predisposition. First, as noted above, defendant engaged with Kelly's sex-themed

dialogue after learning Kelly's age and before Kelly's final threat to look elsewhere (additionally, defendant's denial of knowledge of Kelly's age is conclusively undermined by the evidence; he would not have initially expressed that the two of them would have to wait to have sex, or that he was concerned about going to jail, unless he knew that Kelly was underage). Second, if the only encouragement required for defendant to explicitly agree to have sex the following day was Kelly's threat to look for someone else, defendant already had a predisposition, if not an outright intent, to have sex. Seeking sex with a minor to "protect" the minor from some other harm (such as sex with someone else) is not a defense. Even if the thought of Kelly going elsewhere solidified defendant's intent to have sex, it did not create that intent.

The other evidence the majority recites does not amount to sufficient credible evidence of entrapment either. The majority notes that defendant has not been known to engage in illegal sexual conduct with a minor in the past and that defendant expected to interact only with adults on Craigslist because of that website's age restrictions.

First, the fact that defendant has not been known to engage in the same illegal conduct as the offense charged is not significant evidence that defendant had no predisposition to commit the offense. An individual's history is weak evidence of how that person might act in any given new situation. That principle holds true in this case too—the fact that defendant had not been known to seek illegal sex with a minor before does not mean he was not predisposed to do so with someone like Kelly, who

was, in defendant's words "the prettiest boy [he] ever saw" and "just what [he had] been looking for."

Second, it may be true that defendant originally expected to interact with only of-age individuals when he first accessed Craigslist, but that too is, at best, weak evidence that he had no criminal predisposition.[5] Defendant admitted he had sexual intentions when he responded to Kelly's Craigslist advertisement. And he continued pursuing a relationship with Kelly after Kelly revealed his young age and kept asking if the two of them could have sex.

Indeed, the majority's approach directly contradicts the approach this Court took in *Luster* when evaluating a defense of entrapment. In that case the Court held that the defendant's evidence of entrapment, which included his assertions that he had never committed a crime like the one charged and that law enforcement paid him $400 to encourage him to commit the crime again, was "overwhelmingly refute[d]" by other evidence. 306 N.C. at 581, 295 S.E.2d at 429. This case is like *Luster*. Though defendant has presented evidence that he has not had unlawful sex with an underage person, and though he claims he did not know Kelly's age, far greater evidence shows that he was well aware of Kelly's age and was predisposed to commit the offense.

At the core, then, the majority goes wrong because it misunderstands the standard of review. Certainly, we must reasonably view all the evidence in the light

---

[5] Predisposition, after all, is not the same as intent. A predisposition may remain latent and subconscious until an opportunity to act on it arises.

most favorable to defendant. *See, e.g.*, *id.* at 572, 295 S.E.2d at 425. Yet, that does not mean we disregard evidence that dramatically contradicts defendant's assertions. This Court should give defendant the benefit of the doubt when there *is* doubt. Ultimately, though, defendant has the burden of demonstrating that the facts, considered *in their entirety*, present "credible" and "sufficient" evidence that defendant was not predisposed to commit the offense. *Id.* at 571–72, 295 S.E.2d at 424–25. The majority improperly grasps onto only those facts which could possibly support defendant's claim, and it ignores all the others. If the majority considered the factual record properly, it would see that, if anything, substantial evidence shows that defendant intended to engage in sexual conduct with Kelly from the beginning to the end of their text conversation and that he was predisposed to commit the offense. The trial court thus properly denied defendant's request for a jury instruction on the defense of entrapment. The decision of the Court of Appeals should be affirmed.

I respectfully dissent.

Justice MORGAN joins in this dissenting opinion.